Filed 8/17/15  In re Jackie S. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JACKIE S. et al, Persons Coming Under the Juvenile Court Law. | B256912 |
| | (Los Angeles County Super. Ct. No. CK97135) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. GABRIELA S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle Cortez, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Gabriela S., the mother of four-year-old Jackie S., three-year-old Destiny S. and two-year-old K.Z., appeals from the jurisdiction findings and disposition order declaring her children dependents of the juvenile court and removing them from her custody after the court sustained an amended petition pursuant to Welfare and Institutions Code section 300[1] alleging that K.Z. had suffered severe physical abuse by her father, Luis Z., and that Gabriela and Luis had failed to obtain timely and necessary medical care for K.Z., placing K.Z. and her siblings at substantial risk of harm. While acknowledging the propriety of dependency jurisdiction based on Luis's physical abuse of K.Z., Gabriela contends there is insufficient evidence of her own medical neglect of K.Z. to support dependency jurisdiction on that ground and there were reasonable means to protect the children's safety and well-being other than removing them from her custody. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Dependency Petition*

On December 28, 2012 the Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300 alleging then six-week-old K.Z. had been hospitalized on December 20, 2012 in critical condition with multiple rib, arm and leg fractures all at different stages of healing. K.Z. had also suffered bilateral subconjunctival hemorrhaging (bleeding in both eyes) and necrosis of the sternocleidomastoid muscle in the neck. She had undergone emergency surgery. The Department alleged K.Z.'s severe injuries were consistent with nonaccidental trauma and would not have occurred except as the result of deliberate and neglectful acts by both of K.Z.'s parents in whose care K.Z. had been since birth. In addition, the Department alleged Gabriela and Luis had failed to obtain timely and necessary medical care for K.Z. following several of her injuries. The parents' actions and neglect, the petition alleged, also put K.Z.'s siblings, then one-year-old Destiny and two-year-old Jackie, at substantial

---

[1] Statutory references are to this code.

risk of physical harm.[2]  Following a hearing, the court found prima facie evidence that the three children were persons described by section 300 and ordered K.Z. and her siblings immediately detained in shelter care.  The Department later placed them with their paternal grandparents.

2. *The Contested Jurisdiction Hearing*

Both parents denied the allegations in the petition.  The contested jurisdiction hearing, originally scheduled for April 12, 2013, was continued several times for various reasons, including the appointment of a guardian ad litem for then 24-year-old Gabriella, who is developmentally disabled with the cognitive abilities of a seven-year-old child.  By the time the hearing began in November 2013, Luis, pursuant to a negotiated plea agreement, had been convicted of felony child abuse and sentenced to an aggregate state prison term of six years.  Luis appeared at the jurisdiction hearing in custody and, when asked to testify about his care of K.Z., asserted his rights under the Fifth Amendment.

According to the evidence at the jurisdiction hearing, Luis and Gabriella lived with K.Z., Destiny and Jackie in a room they had rented in a house.[3]  Gabriela's brother also rented a room in the same house but did not help with K.Z.'s care.  On December 9, 2012 Luis took K.Z. to the doctor because she was suffering from constipation and vomiting.  Luis did not inform the doctor K.Z. was injured or that he had done anything to cause K.Z. pain or discomfort.  No X-rays were taken, and no physical injuries were observed.  K.Z.'s treating physician on December 9, 2012 diagnosed her with abdominal colic, directed Luis to replace her formula with Pedialyte for two weeks and sent them home.  After returning home K.Z.'s constipation improved, but her crying substantially increased.  A maternal uncle reported the only time K.Z. appeared not to cry was when she was sleeping.  On December 20, 2012, while Gabriela was feeding K.Z., the baby's

_____

[2]  Luis and Gabriela are not married; Luis was found to be the presumed father of Destiny and K.Z., but not Jackie.

[3]  K.Z.'s maternal relatives told social workers Jackie mostly lived with her maternal grandmother at her grandmother's residence.  Gabriela explained Jackie lived with their family but frequently visited her grandmother.

3

eyes "started to roll around," and her head moved back and forth. K.Z. became rigid, and her lips turned blue; it appeared she was not breathing. Luis, along with Gabriela's father, brought K.Z. to the hospital while Gabriela stayed home with her other daughters.

Dr. Janet Arnold-Clark, a board-certified pediatric physician and certified forensic specialist on child abuse, was one of K.Z.'s treating physicians when she arrived at the hospital on December 20, 2012. K.Z. presented with six separate posterior rib fractures, a fracture of her right forearm and fractures to her right and left tibias; her fractures were at different stages of healing. In addition, K.Z. suffered from a firm necrotic mass in her neck that likely began as a benign fibromatosis colli tumor (a slowing growing tumor of infancy that generally resolves without treatment) but had become necrotic most likely due to trauma or strangulation, requiring emergency surgery to save K.Z.'s life. K.Z. also presented with bilateral subconjunctival hemorrhages that Dr. Arnold-Clark explained were the result of increased vascular pressure in the eyes. Dr. Arnold-Clark testified with a six-week-old infant, birth-related trauma for subconjunctival hemorrhaging can be ruled out; such hemorrhages are typically caused by direct blunt force trauma, strangulation or smothering.

Luis and Gabriel initially denied knowing how K.Z. had been hurt. Later, Luis offered several possible explanations for K.Z.'s injuries: He had rolled on top of her one time when he was sleeping and awoke to hear a cracking sound and K.Z. gasping for air; he tripped with K.Z. in his arms and dropped her, causing her to fly in the air and land with her side hitting the sofa; he had been holding K.Z. while arguing with Gabriela and got so angry that he squeezed K.Z. really hard; and he had dropped K.Z. in her infant carrier after the handle broke. Dr. Arnold-Clark found Luis's proffered explanations for K.Z.'s injuries failed to adequately explain the nature and extent of the harm K.Z. had suffered. Dr. Arnold-Clark opined that K.Z.'s injuries were the result of deliberately inflicted forcible trauma and "there's not a plausible way" that Luis and Gabriela could have taken care of K.Z. and not been aware of her substantial injuries.

Gabriela testified she and Luis were K.Z.'s sole caretakers. She bathed K.Z. every other day, but had not noticed a lump on the side of her neck. She did see a rash on

4

K.Z.'s neck a few days before K.Z. was hospitalized on December 20, 2012. In addition, in an interview with detectives investigating the abuse, Gabriela acknowledged having also seen blood in K.Z.'s eyes on December 12, 2012, but she did not take her to the doctor at that time. At the hearing Gabriela said she saw redness in K.Z.'s eyes before Luis had taken her to the doctor on December 9, 2012 as well as in the days after that appointment, although K.Z.'s December 9, 2012 medical records made no mention of subconjunctival hemorrhaging.[4]

K.Z.'s maternal uncle told social workers that Gabriela routinely neglected the children. Luis left the children in Gabriela's custody all day while he went to look for work. Although Gabriela plainly loved her children, she seemed unable because of her cognitive disabilities to care for them or uninterested in doing so. K.Z. frequently remained in soiled diapers until the maternal uncle's girlfriend changed them. Even the most minimal care for the children was provided by Luis, rather than Gabriela. The maternal uncle's girlfriend confirmed his account, telling social workers Gabriela did not recognize her children's basic needs; she needed to be told when to feed the children and when to change their diapers. Gabriela often appeared frustrated at the care the children required, asking "she peed again?"

After K.Z. had been crying incessantly a few days before December 20, 2012 and appeared to be in pain, the maternal uncle urged Gabriela to take her to the doctor; but Gabriela became defensive and refused. Luis explained he had taken K.Z. to the doctor on December 9, 2012 and thought "that was enough."

Dr. Thomas J. Grogan, a pediatric orthopedist called by Gabriela, agreed with Dr. Arnold-Clark that several of K.Z.'s injuries looked suspicious for child abuse, but found many, if not all, of the fractures K.Z. had sustained would have been imperceptible to a nonabusing caregiver. It would have been reasonable, he explained, for Gabriela to

---

[4]     After Gabriela testified, the guardian ad litem requested to be relieved on the ground Gabriela appeared to understand the proceedings and the questions posed to her, if explained simply, and did not require a guardian ad litem to protect her interests. The court agreed and granted the appointed guardian ad litem's request to be relieved.

attribute K.Z.'s obvious distress to the diagnosed colic. As for the subconjunctival hemorrhaging, Dr. Grogan stated it can occur from injuries sustained during birth as well as from abuse and was not life-threatening. Like K.Z.'s fractures, he explained, the hemorrhaging in K.Z.'s eyes would have resolved on its own. He opined none of K.Z.'s injuries was sufficient to put Gabriela on notice that K.Z. had been abused.

Gabriela's regional center caseworker, Efraim Wong, reported that Gabriela had been accepted for regional center services in February 2013 but appeared unmotivated to utilize them, having waited until May 2013 to appear at the regional center. Wong stated the regional center offered a training program that involved teaching parents to maintain a clean household and shop for groceries and basic essentials, but the program would only be able to offer services for two or three hours a week. At this point, in Wong's view, Gabriela lacked the necessary constant support and supervision at home that would enable her to successfully care for her children and keep them safe from harm.[5]

At the end of the multi-day jurisdiction hearing the court directed counsel to submit their respective closing arguments in writing. All counsel agreed the evidence of Luis's abuse of K.Z. was sufficient to support jurisdiction over all three children. As to Gabriela, the Department argued Gabriela either inflicted the abuse or knew or should have known of Luis's physical abuse of K.Z. and failed to protect K.Z. and seek necessary medical treatment for her. Gabriela's counsel and counsel for the children, on the other hand, argued the evidence was insufficient to support allegations against Gabriela of abuse, failure to protect and medical neglect. However, the children's counsel urged the court to modify the petition according to proof and to sustain an

_____

[5]     A preliminary psychological evaluation conducted in December 2013 pursuant to Evidence Code section 730 concluded that Gabriela lacked the cognitive ability to determine when her children were in medical distress or when they were being mistreated or neglected. The evaluation was never completed because Gabriela failed to appear for her follow-up appointments. On April 28, 2013, citing the passage of time since the December 28, 2012 petition and finding any further delay would not be in K.Z.'s best interests, the court refused the Department's request to continue the matter for completion of those evaluations and excluded any evidence relating to them for purposes of its jurisdiction findings and disposition order.

allegation that Gabriela's inability to recognize her children's basic needs created a substantial risk of harm.

On April 29, 2014 the court sustained all allegations involving Luis (§ 300, subds. (a), (b), (e), & (j)). As to Gabriela, the court found the Department had failed to prove Gabriela had physically abused K.Z. or knew of Luis's abuse and had failed to protect K.Z. In addition, taking into account Gabriela's intellectual disabilities, the court concluded Gabriela did not know and had no reason to suspect K.Z.'s crying and obvious discomfort were the result of physical abuse rather than abdominal colic. However, the court sustained the allegation of medical neglect as to Gabriela (§ 300, subd. (b)), concluding that K.Z. had shown symptoms of subconjunctival hemorrhaging as early as December 12, 2012 that were obviously independent of K.Z.'s stomach issues and, despite K.Z.'s apparent and increasing discomfort in the days before December 20, 2012, Gabriela had ignored K.Z.'s cries and her brother's entreaties and did not take K.Z. to the doctor until K.Z. stopped breathing. By the time the parents sought medical care for K.Z., her condition had become critical and emergency surgery was necessary to save her life. The court found Gabriela's neglect of K.Z. and inability to recognize her medical needs also placed Destiny and Jackie at substantial risk of abuse and neglect (§ 300, subd. (j)).

At the April 30, 2014 disposition hearing the court declared K.Z. and her siblings dependent children of the juvenile court and found there were no reasonable means to protect them from harm other than removing them from Gabriela's and Luis's custody. The court denied Luis reunification services pursuant to section 365.1, subdivisions (b)(5), (b)(6), (b)(12) and (e)(1). The court granted Gabriela reunification services, ordered her to participate in regional center services and directed the Department to facilitate those services while taking into account Gabriela's transportation needs and unfamiliarity with the public transportation system.[6]

---

6    In ordering reunification services for Gabriela, the court implicitly found Gabriela's mental disabilities did not "render her incapable of utilizing those services."

7

1. *Standard of Review*

We review the juvenile court's jurisdiction findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

2. *Substantial Evidence Supports the Juvenile Court's Jurisdiction Finding and Disposition Order*

a. *Jurisdiction*

Gabriela contends the court's jurisdiction finding of medical neglect was not supported by substantial evidence.[7] After all, she argues, having been given a colic diagnosis for K.Z. on December 9, 2012, it was reasonable for her to believe K.Z.'s pain and discomfort were due to abdominal colic and the redness in her eyes was the result of

---

(See § 361.5, subd. (b)(2) [reunification need not be provided to parent suffering from a mental disability that renders him or her incapable of utilizing those services].)

[7] The Department urges this court to refrain from considering Gabriela's challenge to the court's findings of medical neglect because dependency jurisdiction over K.Z. and her siblings is proper based on Luis's misconduct. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; ""the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent"""]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].) However, when, as here, the outcome of the appeal could be "the difference between [mother]'s being an 'offending' parent versus a 'non-offending' parent," a finding that could result in far-reaching consequences with respect to these and future dependency proceedings, it is appropriate to exercise our discretion to consider the appeal on the merits. (*In re Drake M.*, *supra*, 211 Cal.App.4th at pp. 762-763; accord, *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re D.P.* (2014) 225 Cal.App.4th 898, 902; *I.A.*, at p. 1494.)

crying. While Gabriela suggests a plausible inference from the evidence, it was by no means the only reasonable conclusion. As the juvenile court observed, Gabriela noticed bleeding in K.Z.'s eyes as early as December 12, 2012, two days after she had taken K.Z. to the doctor, but waited 12 more days to obtain medical care, during which time K.Z.'s condition continued to deteriorate. The maternal uncle reported K.Z.'s distress had become so apparent in the days leading up to K.Z.'s emergency hospitalization that he had implored Gabriela and Luis to take K.Z. to the hospital but they either ignored or refused those requests. By the time they did seek treatment for K.Z., she required emergency surgery to save her life. Had she been left untreated any longer, Dr. Arnold-Clark testified, she would have died. Dr. Arnold-Clark also explained the subconjunctival hemorrhaging—the result of strangulation, smothering or a direct blow to the child—would have been obvious to the parents, as would the firm necrotic mass on the side of K.Z.'s neck, which Dr. Arnold-Clark explained was plainly distinguishable from a rash, even to one without any medical training. Presented with conflicting expert opinions on whether Gabriela knew or should have known that K.Z. was in distress requiring necessary medical treatment, the court carefully weighed the evidence and sided with Dr. Arnold-Clark on this question (while rejecting Dr. Arnold-Clark's opinion on Gabriela's knowledge that K.Z.'s injuries were the result of abuse). Substantial evidence supports that finding.

Gabriela's reliance on *L.Z. v. Superior Court* (2010) 188 Cal.App.4th 1285 is misplaced. There, the juvenile court sustained a petition under section 300, subdivisions (b) and (e), alleging that an infant in her parents' care had sustained multiple rib fractures and a fracture to her arm from nonaccidental trauma and that the parents had inflicted the injuries and failed to protect her from harm. The juvenile court, troubled by its inability to determine which parent had inflicted the abuse, denied both parents reunification services pursuant to section 361.5, subdivision (b)(5), which authorizes the court to decline to provide reunification services because of the parent or guardian's severe physical abuse of a child younger than five, and set the matter for a section 366.26 hearing to consider terminating parental rights. The mother sought writ review, asserting

9

there was insufficient evidence to support the denial of reunification services to her. The Court of Appeal agreed. Although it found sufficient evidence to support dependency jurisdiction, the appellate court concluded there was no evidence mother had inflicted the abuse and little, if any, evidence she knew or should have known the baby had been abused. On that record, the court held the evidence was insufficient to support the denial of reunification services to the mother. (*L.Z.,* at p. 1294 ["the statutes do not permit the court to deny a parent reunification services simply because it cannot determine who inflicted the abuse unless it is proven that the parent knew or should have known the baby had been abused"].)

In contrast to the *L.Z.* court, the juvenile court in the instant matter dismissed the allegation against Gabriela under section 300, subdivision (e), and ordered reunification services, finding insufficient evidence that Gabriela either abused K.Z. or knew of the abuse to support a denial of reunification services. Rather than assist Gabriela in her challenge to the court's jurisdiction findings under section 300, subdivision (b), *L.Z.* reinforces the propriety of the court's careful jurisdiction finding and order.

b. *Disposition*

Section 361, subdivision (c)(1), permits removal of a child from his or her parent's custody only if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned home and that "there are no reasonable means by which the [child]'s physical health can be protected without removing" the child from his or her parent's custody. "The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

Gabriela contends there was insufficient evidence to support the removal order, asserting there were less drastic means to protect the children than removing them from her custody. She emphasizes that Luis was out of the house (in prison) and no longer

10

placed K.Z. at risk.  While true, Luis's abuse was not the only threat to the children's safety and well being.  According to Gabriela's regional center caseworker, Gabriela was unable to recognize her children's basic needs and protect them from harm absent supervision or familial support in the home; without Luis, she had neither.  Regional center services, even if ultimately helpful in assisting Gabriela in this regard, would take time.  Coupled with evidence of Gabriela's inability to recognize K.Z.'s medical needs, this evidence was more than sufficient to support the court's removal order.

## DISPOSITION

The jurisdiction findings and disposition order are affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


STROBEL, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.