Filed 5/21/15 Modified and Certified for Pub. 6/16/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | H041754 (Santa Clara County Super. Ct. No. 1-14-JD22901) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. M.H., Defendant and Appellant. | |

**INTRODUCTION**

Appellant M.H. is the mother of D.P., the child who is the subject of the dependency proceeding. On appeal, appellant contends that there was no substantial evidence to support the juvenile court's jurisdictional finding that D.P. suffered or was at substantial risk of suffering serious emotional damage, as required for jurisdiction under Welfare and Institutions Code section 300, subdivision (c).[1] For the reasons set forth below, we will affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

## A. The Dependency Petition

On October 17, 2014, the Santa Clara County Department of Family and Children's Services (the Department) filed a dependency petition, alleging that D.P., an infant born on September 29, 2014, came within the provisions of section 300, subdivisions (b) (failure to protect), (c) (substantial risk of serious emotional damage), and (j) (abuse of sibling). After a hearing on October 21, 2014, the juvenile court detained D.P., and ordered supervised visitation for the parents.

The petition, which was subsequently amended, included the allegation in paragraphs b-1, c-1, and j-1, that D.P. was placed into protective custody because he was "at substantial risk of harm . . . due to the father's repeated domestic violence against the mother and the mother's inability and unwillingness to protect the child from exposure to domestic violence."

Paragraphs b-2, c-2, and j-2 alleged that since D.P.'s birth, the father had been arguing with mother and drinking alcohol on a daily basis. The father had continuously exercised power and control over appellant by calling her names and putting her down. On October 10, 2014, at the couple's Fresno home, the father had been drinking and the intimate partner violence escalated. Appellant left the home and called the police. Law enforcement officers brought appellant back to the home and made the father leave. Two days later, appellant took D.P. and left the Fresno home and relocated to San Jose. However, the father moved in with appellant in San Jose several days later. The petition alleged that "[d]omestic violence places the child at risk of physical and emotional harm."

Paragraphs b-3, c-3, and j-3 alleged that appellant had a history of dating violent men. Despite her completion of a domestic violence support group, and despite the juvenile court's intervention regarding her other children due to her exposing them to

2

domestic violence, appellant "chooses to continue in a relationship with a man who is the perpetrator of intimate partner violence. Further, she does not recognize the risk this poses to her children, which places [D.P.] at risk of physical and emotional harm in her care."

Furthermore, with respect to the allegations under section 300, subdivisions (b) and (j), the petition included additional facts about D.P.'s half-siblings, E.H., D.D., and J.G. Paragraphs b-4 and j-4 alleged that the three half-siblings were all declared dependents on April 1, 2014 because they were exposed to domestic violence that D.P's father had committed against appellant and because appellant failed to protect them from domestic violence and the father's alcohol problem. In February 2014, during an incident involving domestic violence with the mother, D.P's father pushed one of the half-siblings, D.D., which left D.D. in pain. Appellant had received reunification services with the half-siblings, but she was reportedly "minimally participating in court ordered services and she is not consistently visiting."

Paragraphs b-5 and j-5 alleged an incident on April 11, 2012, where the half-siblings were exposed to intimate partner violence involving appellant and another partner, D.D.'s father. During that incident, D.D.'s father punched appellant and struck D.D. Despite participating in a full year of informal supervision services, appellant remained "unable or unwilling to recognize the risks that exposure to domestic [violence] places on the children's physical and emotional wellbeing."

In paragraph b-6 and j-6, the petition alleged that J.G. was declared a dependent in July 2009 because he suffered from unexplained traumatic injuries, including broken bones. Appellant provided no reasonable explanation for that injury.

Lastly paragraph b-7 alleged that there were pending criminal charges against D.P.'s father for inflicting corporal injury on a spouse and cruelty to a child.

3

## B. *Jurisdictional and Dispositional Report and Hearing*

On November 10, 2014, the juvenile court held a contested jurisdictional and dispositional hearing. At the hearing, the juvenile court admitted the jurisdiction/disposition report and an addendum to that report as evidence.

The Department's jurisdiction/disposition report recommended that the juvenile court declare D.P. a dependent of the court and that the parents receive family reunification services.

The jurisdiction/disposition report included excerpts from social worker Beatriz Alvarado's report, who had interviewed appellant and D.P.'s father and had reviewed several documents related to the present case. The social worker reported that appellant and D.P's father had been together since January 2014. During the course of their relationship, the couple "[fought] all the time." Appellant told the social worker that the father drank alcohol every day since appellant was discharged from the hospital after giving birth to D.P. and that they had a lot of arguments about how the father no longer wanted to be with her. Leading up to the October 10, 2014 incident at the Fresno home, appellant and the father had been fighting all week long and "the situation kept getting worse." The father "kept getting louder, physically intimidating, and [appellant] told [the father] that she was going to leave and take the baby if he did not calm down." When appellant went to take the baby, the father "stood in her way and instead grabbed the baby." Appellant then called the police, who made the father leave for the night. The father returned the next morning inebriated and began drinking again as soon as he came home. Appellant stayed in her bedroom all day and night because she felt unsafe and uncomfortable. Appellant told the social worker that she continued to feel unsafe and uncomfortable, so she decided to go back to San Jose on October 12, 2014.

The jurisdiction/disposition report also described appellant's domestic violence history. Appellant had been involved in at least two relationships involving domestic violence. The report included facts about the February 2014 and the April 2012 domestic

4

violence incidents, and the addendum to the report included police reports and an investigation narrative related to these incidents. During the February 2014 domestic violence incident, D.P.'s father reportedly grabbed appellant, slammed her against the door several times, and slapped her with an open palm. He also pushed D.D. off a bed, and the child landed on his buttocks. The two other half-siblings were also present during this altercation. As to the April 2012 domestic violence incident, appellant was sitting on a bed with D.D. in her lap. D.D.'s father punched appellant in the forearm, and struck D.D. as well. He then dove on top of appellant to wrestle her cell phone away from her, and "head butted" her, which caused swelling near her eye. The report stated that D.D.'s father was arrested for that incident and was later convicted of domestic violence.

The Department noted in the jurisdiction/disposition report that appellant appeared to love D.P. very much and stated that she would do all recommended services in order to reunify with him. She had attended all of her visits with D.P., which were three times a week for one hour. Nonetheless, the Department concluded that D.P. was "unsafe at home in care of the parents," as appellant minimized the domestic violence and failed to recognize the risk that the father poses to D.P. and the impact that domestic violence has on her children. Appellant was still in a relationship with the father and "there continues to be issues with domestic violence." Additionally, appellant had previous relationships involving domestic violence, and her other children had been exposed to that violence on several occasions. The report stated that though appellant had participated in domestic violence victim services, she was unable to protect herself and did not have the necessary skills and tools to protect herself and her children. Moreover, D.P.'s father had an alcohol problem, and appellant seemed to be unable to protect D.P. from this problem. The report stated that in his short life, D.P. has been exposed to his parents' constant arguing and his father's alcohol problem. The Department noted that because D.P. was an infant, he was not exhibiting symptomatology, such as anxiety or depression, but he

was nonetheless at risk of suffering emotional harm because he had been exposed to verbal altercations between his parents.

At the hearing, appellant waived trial rights and submitted to the court's jurisdiction on the petition under section 300, subdivision (b) and (j). However, she objected to the allegation that D.P. suffered or had a substantial risk of suffering "serious emotion damage" under section 300, subdivision (c).

The juvenile court found that all of the allegations in the dependency petition were true. The court sustained the dependency petition and declared D.P. a dependent of the court. It ordered D.P. to be removed from custody of his parents, granted the parents reunification services, and adopted the case plan recommended by the Department.

## DISCUSSION

### 1. *The Appeal Should Be Addressed on the Merits*

On appeal, appellant contends that the juvenile court erred in sustaining the petition under section 300, subdivision (c), because the evidence was insufficient to show that D.P. suffered, or was at risk of suffering, severe emotional harm.

The Department contends that the appeal should be dismissed as moot because appellant did not challenge the juvenile court's jurisdiction under section 300, subdivisions (b) and (j). "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

6

Appellant acknowledges that the reversal of the section 300, subdivision (c) allegation would not affect the juvenile court's jurisdiction over D.P., as a true finding under one subdivision is sufficient for the juvenile court's jurisdiction. Nonetheless, appellant contends that we should address the merits of her challenge to the section 300, subdivision (c) allegation because this case involves "an important legal issue which has been treated differently by different districts of the court[s] of appeal," and because she would be "seriously prejudiced."

Courts may exercise their "discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [Citation]." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) We agree that the finding on the section 300, subdivision (c) allegation could potentially affect future dependency proceedings. Thus, we will exercise our discretion and consider the merits of the appeal. (See *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015.)

### 2. *Substantial Evidence Supports the Juvenile Court's Jurisdictional Finding Under Section 300, Subdivision (c)*

Appellant contends that the evidence is insufficient to support the jurisdictional finding under section 300, subdivision (c).

In the trial court, child welfare authorities have the duty to establish the jurisdictional facts by a preponderance of the evidence. (*In re D.C.*, *supra*, 195 Cal.App.4th at p. 1014.) On appeal, however, " 'we must uphold the [trial] court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.]' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

7

"To be sufficient to sustain a juvenile dependency petition the evidence must be ' "reasonable, credible, and of solid value" ' such that the court reasonably could find the child to be a dependent of the court . . . . [Citation.]" (*In re R.M.* (2009) 175 Cal.App.4th 986, 988.)  Moreover, "[s]ubstantial evidence . . . is not synonymous with any evidence. [Citation.]  'A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' [Citation.]  Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence. Inferences that are the result of mere speculation or conjecture cannot support a finding. The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record.  [Citations.]" (*In re James R., Jr.* (2009) 176 Cal.App.4th 129, 135.)

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (c) where "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care."

Appellant relies primarily on *In re Brison C.* (2000) 81 Cal.App.4th 1373 (*Brison C.*), arguing that the evidence was insufficient since D.P. showed no signs of serious emotional harm or any evidence of "severe anxiety, depression, withdrawal or untoward aggressive behavior."  (§ 300, subd. (c).)  In *Brison C.*, the appellate court reversed the juvenile court's finding that the child had suffered or was at significant risk of suffering serious emotional damage.  (*Brison C., supra,* at p. 1383.)  The child in that case was in the middle of a contentious, but nonviolent, custody dispute between his parents, and he had reportedly suffered from nightmares, feared his father, and had suicidal ideation if forced to visit or live with his father.  (*Id.* at p. 1377.)  The appellate court ultimately concluded that there was insufficient evidence to support the trial court's finding that the

8

child was in significant danger or suffering serious emotional damage. (*Id.* at p. 1379.) In doing so, the court noted that the parents had "recognized the inappropriateness of their past behavior and of commenting to Brison about the other. They have expressed a willingness to change their behavior patterns and to attend counseling and parenting classes." (*Id.* at p. 1381.) There was also "no evidence showing that the parents . . . [were] incapable of expressing their frustration with each other in an appropriate manner." (*Ibid.*)

*Brison C.* is distinguishable from the present case. Unlike the parents in *Brison C.,* who had demonstrated their willingness to change their behavior, appellant continued to minimize domestic violence, had failed to recognize the risk that the father posed on D.P., and had failed to see the impact that domestic violence had on the physical and emotional well-being of the child. In fact, she continued to display her unwillingness to change, as evidenced by the fact that she chose to stay in a relationship with the father despite their history of domestic violence. (See *In re A.J.* (2011) 197 Cal.App.4th 1095 (*A.J.*) [distinguishing *Brison C.* based on the appellant's failure to recognize her inappropriate behavior or to express a willingness to change]; see also *In re Christopher C.* (2010) 182 Cal.App.4th 73, 85.) Further in contrast to *Brison C.*, where the parents were involved in a contentious but non-violent dispute, the situation here involves a history and pattern of physical domestic violence, which had resulted in injury to appellant and a half-sibling.

Furthermore, though it is true that there was no evidence that D.P. had actually suffered emotional harm, section 300 (c) nonetheless applies to a child who is at substantial risk of suffering serious emotional damage even when there is insufficient evidence of actual harm. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1320 (*Matthew S.*); see also see also *A.J., supra,* 197 Cal.App.4th at p. 1104 ["Whether A.J. actually was suffering serious emotional damage at the time of the hearing is not the only relevant

9

issue: Section 300(c) extends both to a child who is suffering serious emotional damage, and a child who is at *substantial risk* of suffering serious emotional damage."].)

In *Matthew S., supra,* 41 Cal.App.4th 1311, the juvenile court sustained a petition under section 300, subdivision (c), finding that the minor was at substantial risk of developing severe emotion problems, even though the minor had not yet been harmed. (*Id.* at p. 1320.) There, the mother, who was suffering from a delusion that her son's penis had been mutilated, took her son to a urologist for a medical examination. (*Id.* at p. 1314.) Notwithstanding the medical examination, the minor reported to have a "warm close relationship" with his mother, and the court found that he had not yet suffered harm from the mother. (*Id.* at p. 1320.) Although the evidence was insufficient that the minor had *actually* suffered emotional harm, the appellate court affirmed, determining that substantial evidence "point[ed] to a substantial risk of emotional harm." (*Ibid*.) "[The mother] brings a foreboding sense of dread, danger and catastrophe to the lives of her children. Although [the minor] so far has been able to deal with his mother's delusions, he is confused by them . . . [and] is forced to shoulder a tremendous burden." (*Ibid.*)

As in *Matthew S.*, the evidence is sufficient here to sustain a finding under section 300, subdivision (c), even though D.P. has not yet suffered emotional harm. In his short life, D.P. had already been exposed to constant arguments and domestic violence between appellant and his father. He had also been exposed to his father's alcoholism since the day of his birth. Appellant was unable to protect D.P. from such exposure to domestic violence and the father's alcoholism. Moreover, appellant's history of domestic violence with D.P.'s father and in different relationships is further evidence that D.P. is at risk of future emotional harm. In previous instances, appellant had exposed her other children to domestic violence, and was unable to protect them from harm. In fact, one child had been physically injured in two incidents of domestic violence. Despite this history of domestic violence and her completion of domestic violence classes, appellant continued to minimize the domestic violence, failed to

10

recognize the risks, and chose to remain in her relationship with D.P.'s father. Given this evidence, the juvenile court reasonably concluded that D.P. would be in a situation where he would be at risk of serious emotional harm.

## DISPOSITION

The jurisdictional/dispositional order is affirmed.

11

_____
RUSHING, P.J.

WE CONCUR:



_____
PREMO, J.




_____
ELIA, J.

Trial Court:                                    Santa Clara County
                                                Superior Court No.:  1-14-JD022901


Trial Judge:                                    The Honorable L. Michael Clark


Attorney for Defendant and Appellant            Catherine C. Czar
M.H.:                        :                   under appointment by the Court of
                                                Appeal for Appellant



Attorneys for Plaintiff and Respondent          Orry P. Korb,
Santa Clara County Department of                County Counsel
Children's Service:
                                                Teri L. Robinson,
                                                Deputy County Counsel


*In re D.P.; D.F.C.S. v. M.H.*
H041754

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.P., a Person Coming Under the Juvenile Court Law. | H041754 (Santa Clara County Super. Ct. No. 1-14-JD22901) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.H.,<br><br>    Defendant and Appellant. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 21, 2015, be modified as follows:

1.  On page 9, line 25, "see also see also" is changed to "see also" so the cite reads as follows:

> (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1320 (*Matthew S.*); see also *A.J., supra,* 197 Cal.App.4th at p. 1104 ["Whether A.J. actually was suffering serious emotional damage at the time of the hearing is not the only relevant issue: Section 300(c) extends both to a child who is suffering serious emotional damage, and a child who is at *substantial risk* of suffering serious emotional damage."].)

The opinion in the above-entitled matter filed on May 21, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion

1

should be published in the Official Reports, and it is so ordered.  Pursuant to California Rules of Court, rule 8.1105(b) and (c), this opinion is certified for publication.

_____
RUSHING, P.J.

_____
ELIA, J.