Filed 9/9/15  C.M. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| C.M., | |
| Petitioner, | E063909 |
| v. | (Super.Ct.No. RIJ1301197) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | O P I N I O N |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Jacqueline C. Jackson, Judge.  Petition denied.

David A. Goldstein for Petitioner.

No appearance for Respondent.

1

Gregory P. Priamos, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Real Party in Interest.

At the 18-month review hearing, the juvenile court terminated petitioner C.M.'s (Mother) reunification services and set the Welfare and Institutions Code section 366.26[1] hearing. Mother filed a petition for extraordinary writ in which she contends the juvenile court erred in determining there was a substantial risk of detriment to H.G. (minor; born July 2013) if returned to Mother's custody and that it was in minor's best interest to extend services to Mother to enable her to obtain suitable housing. The petition is denied.

## I. FACTS AND PROCEDURAL HISTORY

On October 28, 2013, police arrested Mother on charges of felony infliction of corporal injury after she hit Father[2] numerous times, causing him to sustain injuries. The police indicated the parents had a significant history of domestic violence requiring police intervention on numerous occasions, including the arrest of both parents on September 7, 2012. The parents lived with the paternal grandparents (PGPs) and the paternal uncle. Mother had filed restraining orders against Father, the paternal

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father is not a party to the petition; however, the facts pertaining to Father are relevant to the instant petition because Mother chose to live with Father during nearly the entire pendency of the proceeding below.

2

grandfather, and the paternal uncle citing domestic violence, but later requested dismissal of the orders and moved back into the PGPs' home.

The paternal grandmother said that Mother could no longer live in the home after her arrest. Father had apparently left the home. Mother said she had no other place to live if the PGPs did not let her return.

Mother had been diagnosed with bipolar disorder. Father informed the social worker Mother had stopped taking her medication. Father was on probation. There had been two prior department referrals regarding the parents for general neglect; one had been determined inconclusive and the other unfounded. The social worker took minor into protective custody.

Attorneys for real party in interest, Riverside County Department of Public Social Services (the Department), filed a juvenile dependency petition on October 30, 2013, alleging the parents had failed to protect minor in that Mother had been arrested for corporal injury to a cohabitant and the parents had engaged in domestic violence in the home (b-1 & b-2), Mother suffered from unresolved mental health issues (b-3), Father abused controlled substances (b-4), and the parents had criminal histories (b-4 & b-5). On or about October 31, 2013, the juvenile court detained minor. An amended juvenile dependency petition filed November 18, 2013, alleged Father also suffered unresolved mental health issues (b-7).

In the jurisdiction and disposition report filed November 20, 2013, the social worker indicated Mother had been released from jail "on or about October 29, 2013" and

3

had been granted 36 months' probation.  Nonetheless, Mother did not appear at the detention hearing.  The social worker made numerous attempts, to no avail, to arrange a meeting with Mother in order to interview her.  Initially the social worker could not find Mother.  Later, when contacted and a meeting was arranged, Mother failed to appear.

The social worker reported Mother "was not willing to provide me with her address.  She indicated she was living with her Father in Los Angeles, but again, she did not want to disclose her exact location."  Later still, the social worker was no longer able to contact Mother.  The social worker noted that "as of this writing, it appears [Mother] is living a transient lifestyle.  It is clear she does not have the provision[s] or the ability to adequately care for [minor] at this time."

Father reported "'it's true I got a cut, and [Mother] was hitting me while the baby was present.  [Mother] kept hitting me, and I walked out of the room but [Mother] kept following me and hitting me.'"  Father admitted he had filed a restraining order against Mother but had not followed through with completing the process.

In an addendum report dated November 25, 2013, the social worker recommended the parents receive reunification services.  The social worker spoke with Mother on the telephone on November 20, 2013.  Mother admitted she and Father had a history of fighting and admitted hitting him several times on October 28, 2013.  She admitted being arrested on September 7, 2012, for assault.  Mother admitted withdrawing a restraining order she had previously obtained against Father.  Mother said she continued to communicate with Father by telephone and text.

4

Father's criminal history consists of several arrests and/or convictions for petty theft, obstructing a peace officer, and trespass. Father had additional arrests and/or convictions for vandalism and battery. Mother's criminal history consists of convictions for battery, petty theft, and corporal injury to a cohabitant, the offense for which the instant matter was initiated.

The social worker noted Mother "is very unstable on many levels. She does not have stable housing, she does not have transportation, and she has limited resources. In addition, she has significant mental health issues which she is currently not in treatment for. [Mother] has not yet addressed her probation terms and conditions due to her domestic disputes with [Father]. Due to her instability, it is recommended that [minor] remain out of her care."

The addendum report filed January 9, 2014, focused on Father. Father had been terminated from one substance abuse program and had inconsistent participation in a subsequent program. Father continually tested positive for marijuana, failing to provide a single negative test. He reported he was unable to enroll in a parenting class and resisted enrolling in an anger management program.

The parents failed to show for the jurisdiction and disposition hearing on January 19, 2014. The juvenile court found the allegations in the petition true, sustained the petition, found return of minor to the custody of the parents posed a substantial danger to her safety, removed minor from the parents' custody, and ordered reunification services for both parents.

5

In a status review report dated June 20, 2014, the social worker noted Mother was living with Father again in the PGPs' home. Father had been arrested on January 8, 2014, for assault with serious bodily injury for biting the paternal grandfather. Mother completed a 10-week parenting course, but the providers were unable to state whether she benefitted from the program. Mother failed to follow through with counseling and medical evaluation monitoring; she was discharged for chronic absences and noncompliance. The social worker twice referred Mother to domestic violence services, but Mother left the programs and was discharged for noncompliance. Father had made appointments for services, but failed to show for them.

In an addendum report filed July 28, 2014, the social worker recommended that the juvenile court terminate the parents' reunification services. Father participated in substance abuse services, but admitted continued use of marijuana. Father failed to comply with counseling and medical health services. Father's probation terms required participation in domestic violence services; however, he had been discharged after failing to show for appointments. On January 21, 2014, the parents arrived together at the Department office. The parents stated they were back together. Father said they were living together at a friend's home. They changed the restraining order to provide only for no negative contact because they wished to be together.

In an addendum report filed August 21, 2014, the social worker reported that Mother was noncompliant with her visitation schedule with minor as she often missed visits or cut them short. Mother had enrolled in a 16-week anger management program

6

and had seven sessions left to complete the program. Father had not completed, and was no longer participating in, a substance abuse program. On August 19, 2014, Father admitted smoking marijuana a week earlier. Father had enrolled in and dropped out of several anger management programs. At the six-month review hearing on August 26, 2014, the juvenile court continued the parents' reunification services for an additional six months.

In the status review report dated December 5, 2014, the social worker again recommended terminating the parents' reunification services. The parents were still in a relationship with one another and living with the PGPs. Father tested positive for marijuana on September 28 and November 14, 2014. Father admitted using marijuana on September 3, 2014, and the week previous to the preparation of the report. "When discussing the Department recommendation to terminate services [the social worker] explained to [Mother] it was a concern that [Father] was still using substances and it would be inappropriate to place [minor] in that situation."

Mother had just enrolled in a domestic violence class on November 10, 2014, but brought Father to classes with her. Father brought his girlfriend[3] to an anger management class and almost got into a fight with another class member. Father was late to visitation with minor and was observed to be emotionally abusive to Mother.

---

[3] The record does not specify whether Father's "girlfriend" was Mother or another woman.

7

In the addendum report filed January 23, 2015, the social worker noted Father was asked to drug test on December 19, 2014, after minor smelled of marijuana after Father handled her. Father was told a failure to test would be considered as a positive result. Father failed to test. Nonetheless, Father tested negative for drugs on November 25 and December 4, 2014. Father had still failed to complete a substance abuse program. Father had completed an anger management class, but did not appear to benefit from it. Father completed a 16-week parenting class, but was recommended to complete a 32-week course due to Father's estimated high rate of substance abuse recidivism. Mother had attended four sessions of therapy in three months, missing eight out of a total of 12 scheduled sessions.

On January 28, 2015, the court ordered Father to complete a hair follicle drug test; Father failed to show. On February 26, 2015, the social worker filed an addendum report in which she indicated Father was participating in an aftercare substance abuse program. Father had been diagnosed with severe obsessive-compulsive disorder, attention deficit disorder, and depressive disorder. Father had not seen his doctor since July 2014, when he was given a supply of medication which would have run out in September 2014. Father subsequently attended counseling on February 4, 2015, when he was given a new prescription. Mother had completed 11 out of the 52 sessions of a domestic violence class required for her probation.

In the addendum report filed March 11, 2015, the social worker noted that Mother had improved her attendance in therapy. Father had a negative hair follicle drug test on

8

February 25, 2015. The social worker observed that the quality of Father's visits with minor was poor as he often expressed anger. On March 16, 2015, at the 12-month hearing, the juvenile court terminated Father's reunification services, but extended Mother's for an additional six months.

On April 23, 2015, the social worker filed the 18-month review report in which she recommended that the court terminate Mother's reunification services. Mother had completed 16 out of the 52 weekly sessions of the domestic violence class required by her probation. Mother's therapist reported Mother was doing well.

On March 17, 2015, the social worker "gave [Mother] the number for shelters but she was unable to write the number [down] so I asked her to come into the office the following day. On March 18, 2015, I gave her the referral for shelters. I told her she needed to move out as soon as possible. I spoke to her about standing o[]n her own[,] being able to support herself[,] and not depending on the [PGPs]." On March 30, 2015, Mother moved into a shelter, which required her to look for employment and participate in codependency classes. On April 14, 2015, the social worker went to the shelter where she was informed Mother had not been taking her medication.

In the addendum report filed May 22, 2015, the social worker noted Mother left the shelter on April 30, 2015, said she was not sure if she was going to return, and asked what would happen if she moved back in with Father. Mother had, in fact, already moved back in with Father. Mother missed two sessions of counseling. During three

9

subsequent visits with Mother, two unsupervised, minor was injured. Mother appeared overwhelmed by any visits with minor lasting over an hour.

On June 5, 2015, the social worker filed an additional addendum report in which she noted Mother was participating in another parenting class. Mother had still only completed 16 out of the 52 weekly sessions of the domestic violence program required by her probation; however, Mother had completed 11 classes in another domestic violence program. Mother still appeared overwhelmed during visitation with minor. During the reporting period, the social worker had found Facebook picture postings of Father with alcohol,[4] drugs, and a gun.

In another addendum report filed June 23, 2015, the social worker reported Mother had ended a visit with minor on June 5, 2015, after she unsuccessfully attempted to redirect minor and minor became injured. Mother told the social worker Mother was considering returning to the shelter. She said she left the shelter because she did not get minor back. Mother inquired of the social worker how Father could get reunification services reinstated. Mother said of minor, if "'we lose her together we lose her.'"

At the section 366.22 hearing on June 24, 2015, Mother testified she had participated in parenting classes and counseling. She was still living with the PGPs. The shelter Mother had previously resided in allowed children, but she did not wish to return there. She had only received one referral for housing from the social worker. Mother

---

[4] Father was under the age of 21 at the time.

10

testified she could live with a friend of Father. She was ready to be minor's Mother again.

The court exposited that minor was only three months old when detained and was now almost two years old: "That is an incredibly long time for parents to have had the opportunity to reunify on a six-month case by statute." "And so my concerns with Mother's [request] that [family maintenance services] be afforded to her is that I cannot return her to a household where services have been terminated to Father. It's an inappropriate household for [minor] to be returned to."

The court reasoned that a shelter would have been a good option if Mother had stayed; however, Mother chose to return to the PGPs' home: "It's really Father's residence as well and that creates issues that cannot be overlooked." The juvenile court found that the return of minor to Mother's custody posed a substantial risk of detriment to minor, terminated Mother's reunification services, and set the section 366.26 hearing.

## II. DISCUSSION

A. *Detriment*

Mother contends insufficient evidence supports the juvenile court's determination there was a substantial risk of detriment to minor if returned to Mother's custody. We disagree.

"Until reunification services are terminated, there is a statutory presumption that a dependent child will be returned to parental custody. [Citation.] As relevant here, section 366.22, subdivision (a) requires the juvenile court at the 18-month review hearing

11

to return the child to the custody of the parent unless it determines, by a preponderance of the evidence, that return of the child would create a substantial risk of detriment to the child's physical or emotional well-being." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400.) "We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.] "'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. [Citation.]' [Citation.]" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)

"[O]ngoing domestic violence in the household where children are living, standing alone, 'is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.' [Citations.]" (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1453-1454; accord, *In re D.P.* (2015) 237 Cal.App.4th 911, 919 [evidence that the mother remained in a relationship with alcoholic father who committed domestic violence was sufficient to support juvenile court's finding of detriment].)

Here, Mother continued to live in a home where Father kept using drugs and where there had been ongoing domestic violence issues not only between Mother and Father, but between Father and the paternal grandfather and Mother and the paternal grandfather and the paternal uncle. The initiating incident in the instant case was domestic violence between Mother and Father for which Mother was arrested and

12

convicted of corporal injury to a cohabitant. Father reported that Mother was hitting him while minor was present and continued to hit him as he walked out of the room.

After the Department initiated the proceedings in the instant case, Father was arrested for assault with serious bodily injury for biting the paternal grandfather. Father also nearly got into a fight with a class member in his anger management class. Father displayed anger during visitation with minor and was observed to be emotionally abusive to Mother. In a later report, the social worker attached a picture of Father from his Facebook page in which he posed holding a gun.

Mother and Father had both previously been arrested for domestic violence. Mother admitted she and Father had a history of fighting. Police reported intervening on numerous occasions at the PGPs' home in response to incidents of domestic violence. Mother had obtained a restraining order against Father, the paternal grandfather, and the paternal uncle; however, she later had the order withdrawn. Likewise, Father had filed for a restraining order against Mother, but did not complete the process to obtain the order.

Although there were a number of incidents of domestic violence in the home, the parents failed to complete services directed at ameliorating the problem. Father's probation terms required participation in domestic violence services; however, he had been discharged after failing to show for appointments. Father had enrolled in and dropped out of several anger management programs. The juvenile court later terminated Father's reunification services.

13

The social worker twice referred Mother to domestic violence services, but Mother left the programs and was discharged for noncompliance. Eighteen months after Mother had been granted probation, she had completed only 16 out of the 52 weekly sessions of domestic violence classes required by her probation. Thus, substantial evidence supported the juvenile court's determination that return of minor to Mother's custody in the PGPs' home posed a substantial risk of detriment to minor.

Moreover, Father's continued drug use added additional support to the court's determination of detriment. Father's abuse of a controlled substance was an allegation in the original petition which the court found true. However, Father continually tested positive for marijuana, admitted marijuana use, and failed to complete a substance abuse program. The Facebook pictures from Father's profile included in one of the later reports included photographs of marijuana and defendant posing with a bottle of vodka. Even though Father had some negative drug tests, he was estimated to have a high rate of substance abuse recidivism. Thus, Father's use of alcohol and marijuana also supported the court's determination of detriment.

B. *Housing Services*

Mother essentially contends the court erred in determining the Department had provided reasonable services because social workers had not offered services directed at helping Mother find suitable housing. She argues the court should have given Mother an additional six months of services directed at helping Mother find housing away from the PGPs. We disagree.

14

"At the 18-month review hearing, the court may continue the hearing under section 352 if it finds that reasonable family reunification services have not been offered or provided to the parents. [Citation.]" (*Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 1424.) "We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling. [Citation.] '"Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value. [Citation.]' [Citation.]" (*Ibid*.)

If the social worker contends a parent's failure to provide suitable housing forms the basis for a determination not to return a minor to a parent's custody, the social worker must establish the department provided reasonable services directed at helping the parent ameliorate the problem. (*In re P.C.* (2008) 165 Cal.App.4th 98, 106; *In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1215-1216; *David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793, 795.)

Here, the social worker's recommendation to terminate Mother's reunification services was based not on her failure to obtain suitable housing, but, in part, on her choice to reside in a home which posed a substantial risk of detriment to minor. Early on, Mother left the home of the PGPs and said she had no other place to live. The social worker noted that Mother was living a "transient lifestyle" without "stable housing" and could, therefore, not adequately provide for minor. However, the social worker repeatedly attempted to contact Mother and meet with her, to no avail. It is difficult to

15

envision how the social worker would have provided housing services at that point when Mother failed to make herself available for such services.

Nevertheless, soon thereafter Mother moved back into the PGPs' home with Father, where she apparently continued to reside until after Father's reunification services were terminated. Although Mother testified the social worker gave her only one shelter referral, the social worker's report indicates that the referral contained information on a number of shelters. Mother moved into a shelter which allowed her to live with minor; however, Mother chose to move back into the PGPs' home after only 30 days.

Likewise, although Mother testified at the section 366.22 hearing that she could live with a friend of Father, she had yet to do so. It is evident from the record that Mother preferred, and intended to continue, to live with Father at the PGPs' home. Mother testified she did not want to return to the shelter. She also indicated an intention to remain with Father even if that meant she were to lose custody of minor permanently. Thus, sufficient evidence supported the juvenile court's determination that the Department provided reasonable services.

## III. DISPOSITION

Mother's petition for extraordinary writ is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>KING</u>
J.

We concur:

16

McKINSTER
                         Acting P. J.

MILLER
                              J.