Filed 12/1/15  In re Gavin T. and Aiden T. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re GAVIN T.  and AIDEN T., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B261120 (Super. Ct. No. 1436246 ) (Super. Ct. No. 1436247) (Santa Barbara County) |
| CHILD WELFARE SERVICES, Plaintiff and Respondent, v. C.W. , Defendant and Appellant. | |

C.W. appeals a jurisdictional/disposition order removing her nine-year-old son, Aiden T., from her physical custody.  (Welf. & Inst. Code, §§ 300, subd. (b); 361, subd. (c)(1).)[1]  The order was entered after the trial court found that appellant's substance abuse and domestic violence posed a substantial risk of harm to Aiden.  We affirm.

### Facts and Procedural History

On October 20, 2014, Santa Barbara Child Welfare Services (CWS) filed a dependency petition to detain 16-year-old Gavin T. and nine-year-old Aiden T.  The petition alleged that appellant failed to protect the children (§ 300, subd. (b)) who were at risk of

---

[1] All statutory references are to the Welfare and Institutions Code.

serious harm due to appellant's domestic violence and substance abuse. (§ 300, subd. (c)). Before the petition was filed, appellant was offered a two week detox program but quit the program the first day.

The petition stated that Aiden's older brother, Gavin, was smoking marijuana to deal with stress, anxiety, and depression and was not attending school due to concerns about Aiden's safety. Aiden suffered from severe separation anxiety, had difficulties sleeping, and missed many days of school. The children's father, M.T., was not there to protect the children and had been deported multiple times for criminal activity Father's criminal record included driving under the influence of drugs or alcohol, false personation, disorderly conduct and public intoxication, possession of a controlled substance for sale, assault with a deadly weapon likely to produce great bodily injury, felon in possession of a firearm, and driving with a suspended license.

On October 22, 2014, the trial court detained the children and placed them with their maternal great uncle. At a contested jurisdictional/disposition hearing, the trial court sustained the petition, removed Aiden and Gavin from appellant's physical custody, and ordered supervised visits and reunification services.

*Sufficiency of the Evidence*

Appellant contends that the evidence does not support the removal of Aiden.[2] We review for substantial evidence, resolving all conflicts and drawing all reasonable inferences in favor of the judgment. (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 84.) On appeal, we are precluded from reweighing the evidence or determining the credibility of the witnesses. (*In re B.D.* (2007) 156 Cal.App.4th 975, 986.) Where the petition alleges multiple grounds to bring a child within the dependency court's jurisdiction, the trial court's jurisdictional finding will be affirmed if any one of the statutory bases for jurisdiction enumerated in the petition is supported by substantial evidence. (*In re D.P.* (2015) 237 Cal.App.4th 911, 916.) "As long as there is one unassailable jurisdictional finding, it is

_____

[2] Appellant does not challenge the order removing 16-year-old Gavin from her custody.

2

immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

*Domestic Violence*

Appellant argues that Aiden has not suffered physical harm but that is not a jurisdictional requirement for a removal order. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citations.]" (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) The evidence shows that appellant's boyfriend verbally and physically abused appellant and 16-year-old Gavin when Aiden was present.[3] The domestic violence included yelling, screaming, cussing, and physical violence. On several occasions, Gavin believed the boyfriend was harming appellant and intervened. In one incident, the boyfriend grabbed Gavin by the neck leaving marks on his neck. On another occasion, the boyfriend put Gavin's head in a pillow and threatened to kill him.

The trial court did not err in finding that Aiden's exposure to domestic violence posed a substantial risk of physical harm. (See *In re R.C.* (2012) 210 Cal.App.4th 930, 941; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194 [exposure to recurring domestic violence sufficient to establish risk of suffering serious physical harm]; Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2015) § 3.9, p. 164.) As a matter of common sense, recurring domestic violence is detrimental to children and grounds for removal. (*In re T.V.* (2013) 217 Cal.App.4th 126, 134.) "Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming.' [Citations.]" (*Ibid*.)

*Substance Abuse*

Appellant's substance abuse also supports the order for Aiden's removal. Appellant has abused methamphetamine and opiates for years which affects her ability to

---

[3] The boyfriend has been on parole since 2004, abuses drugs, and has a criminal history that includes receiving stolen property and grand theft. He is prohibited from associating with gangs or entering the City of Santa Barbara without first notifying his parole agent.

protect and care for Aiden. The trial court found that appellant and her boyfriend "used drugs together, I think on a fairly regular basis. They minimize their drug use. They have engaged in domestic violence. They both, in turn, minimize that."

Appellant stated that when she is not taking opiates, her "anxiety levels are just so much that I become almost mentally fogged to where I can't even determine what's going on due to [my] Graves' disease." Appellant admitted that Graves' disease is a serious medical condition and that she is not taking prescription medication. Instead, appellant self-medicates with methamphetamine to "compress" her emotions and gain energy. The boyfriend stated that it causes appellant to behave erratically, "like Arnold Schwarzenegger on steroids. . . ."

Appellant also takes opiates and methamphetamine to avoid drug withdrawal symptoms. When appellant entered the detox program on October 17, 2014, she tested positive for methamphetamine, amphetamine, opiods, oxycontin, and benziodiazapines. Appellant "could not handle" it and quit the program the next day. Ten days later, appellant testified positive for Suboxone, a drug normally prescribed to treat opiate addiction. Appellant admitted that she was using Suboxone without a prescription.

Family members reported that appellant's substance abuse fuels the domestic violence. Aiden's father said that appellant was using opiates when he last saw her and that she looked very ill. The maternal grandmother told a social worker that the boyfriend supplies the drugs and has "enough money and drugs to keep [appellant] happy." The boyfriend testified that appellant is paranoid and has jealously issues that quickly escalate to domestic violence. Appellant "snaps" and thinks everyone is out to get her when she does not have drugs. In one incident, appellant chased the boyfriend in an SUV and trapped him against a brick wall. Fearing for his life, the boyfriend struck appellant in the eye. In another incident, Gavin tried to protect appellant from the boyfriend and was physically harmed.

The trial court reasonably concluded that the substance abuse, domestic violence, and appellant's medical condition pose a significant risk of harm to the children. (§

4

361, subd. (c)(1).) Aiden suffers from severe separation anxiety, fears for appellant's safety, and is scared to go to school. A social worker reported that Aiden "has to be coaxed out of the car at school by the principal while crying and clinging to [appellant], if [appellant] is even able to get him to go to school . . . . [M]ost times, she doesn't even try." There have been many school absences, increasing the risk that Aiden will be exposed to more domestic violence and suffer developmental problems. When school authorities scheduled parent meetings to address the absences, appellant failed to show. Appellant told a social worker that the school absences were due to her substance abuse and that her work schedule as a bartender made it difficult to get Aiden ready for school. At trial, appellant minimized her responsibility for Aiden's truancy and blamed it on his older brother and the family move to Lompoc. Appellant admitted that she started using methamphetamine and dating the boyfriend about the same time Aiden stopped going to school.

Substantial evidence supports the finding that appellant's substance abuse and domestic violence endangers Aiden's health, safety, protection, and well being. (§ 361, subd. (c)(1).) A mental health assessment states that Aiden suffers from Adjustment Disorder with Anxiety and Neglect of a Child. The clinician recommended Intensive In-Home Services for Aiden but appellant declined to authorize the services.

*Father's Criminal History and Drug Use*

Appellant asserts that the evidence does not support the finding that the children's father placed Aiden at risk of harm. Father has an extensive criminal history and has been deported multiple times due to criminal activity. The arrests include possession of a pound of methamphetamine for sale with a handgun in a vehicle. Father agreed to be deported in 2009 to avoid a prison sentence and was deported again in 2014. After the dependency petition was filed, father tested positive for methamphetamine and marijuana, managed to test clean a week later, and then stopped drug testing and visitation. Father knew about appellant's substance abuse but took no steps to protect Aiden. The trial court did not err in finding that father's criminal activities, substance abuse, and parental neglect pose a substantial risk of serious harm to Aiden. (§ 361, subd. (c)(1).)

5

*Less Restrictive Alternative*

Before the court may order a child removed from his parents, it must find by clear and convicting evidence that the child would be at substantial risk of harm if returned home and there are no reasonable means of protecting the child. (§ 361, subd. (c)(1); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) "The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child. [Citations.]" *In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

Before the petition was filed, CWS attempted to work with appellant, offering detox and Voluntary Family Maintenance services. Appellant quit the detox program after the first day, resumed living with the abusive boyfriend, and left the children without a caregiver. When appellant was offered an outpatient program, appellant missed the intake appointment and drug testing on November 1, 2014. A month later, at the jurisdictional/disposition hearing, appellant said that she would not participate in an inpatient drug program.

The evidence shows that Aiden will suffer severe emotional harm if he remains in appellant's custody. Appellant is addicted to methamphetamine and opiates, self-medicates to avoid drug withdrawals, suffers from an untreated hormonal disorder, and has an abusive relationship with a boyfriend who brought drugs into the home and committed acts of domestic violence on family members. Appellant has no plans of leaving the boyfriend and has discussed marriage which will, in all likelihood, be detrimental to Aiden. "A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.]" (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136.) That is the case here.

*Conclusion*

The trial court found that appellant's relationship with the boyfriend is "built on substance abuse and domestic violence" and has placed the children at risk of severe emotional harm. "They're at risk. There's no question they're at risk. Unless there's intervention, there's no question that the domestic violence will continue . . . ." We concur. Appellant has chosen drugs and an abusive male relationship over the safety of her own children. The trial court did not err in removing Aiden from appellant's physical custody.

The jurisdictional/disposition order is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:



GILBERT, P.J.



PERREN, J.


7

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Appellant.

Michael C. Ghizzon, County Counsel, County of Santa Barbara, Ashley E. Flood, Deputy, for Respondent.