Filed 1/25/16  In re L.J. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re L.J. et al., Persons Coming Under the Juvenile Court Law. | B262363 (Los Angeles County Super. Ct. No. DK08725) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v. MARIA J., Defendant and Appellant; TRAVIS J., Defendant and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County.  Philip L. Soto, Judge.  Affirmed.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Appellant.

Linda B. Puertas, under appointment by the Court of Appeal, for Defendant and Appellant.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

Maria J. (Mother) and the Los Angeles County Department of Children and Family Services (DCFS) both appeal from the trial court's February 5, 2015 jurisdictional and dispositional orders regarding minors L.J. (Older Daughter), age 9, A.J. (Younger Daughter), age 7, and C.J., age 5 (collectively Children). Travis J. (Father) joined the brief and arguments of DCFS.

Mother argues the trial court erred in (1) sustaining jurisdiction after finding she subjected Children to serious physical abuse and placed them at risk of future harm; (2) granting full custody of Children to Father; and (3) terminating jurisdiction. DCFS and Father argue the trial court erred in not sustaining the petition on the ground that Mother inflicted emotional abuse on Older Daughter. We affirm on the ground that Mother harmed and placed Children at a substantial risk of harm under Welfare and Institutions Code section 300, subdivision (b)(1).[1]

## BACKGROUND

On November 18, 2014, a caller alleged to DCFS that Children were being abused by Father. When interviewed, Mother and Children spoke negatively about Father. In further investigation, a DCFS social worker (Social Worker) spoke to a different social worker who had previously investigated two prior referrals regarding the family. In contrast to the caller, the prior social worker reported she had determined Father "appear[ed] very appropriate in his parenting," but that Mother "suffers from mental health problems that appear to be causing her to project her own mental illness and fear

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

of [F]ather on [C]hildren." In addition, the prior social worker "could tell in interviewing [C]hildren that they were being coached and that what they were saying about [F]ather came straight from [M]other." In fact, when Social Worker interviewed Children again, all three said they felt safe with Father and Younger Daughter admitted that Mother had told Children to tell Social Worker Father abused them.

When interviewed, Father "adamantly denied ever physically abusing any of the children." Like the prior social worker, he also expressed concerns over Mother's parenting abilities due to her mental health issues. For example, Father says he was Children's full-time caregiver by the end of the parents' marriage in 2014 because "many days" Mother "would tell him that she was too anxious or depressed to leave the bedroom or care for [Children]." After the parents divorced, Father developed "a serious concern about [C]hildren's attendance at school as [M]other consistently takes [Older Daughter] out of school to attend therapist, psychiatrist, and non-emergency medical appointments." Father also "expressed concerns about [Older Daughter] being placed on unnecessary medication that may end up physically harming her."

DCFS's further investigation validated Father's concerns about Mother's parenting. To start, DCFS learned Mother had previously lashed out at Children because of her mental health challenges. For example, Mother admitted to slapping Older Daughter even though she knew "it was wrong" and spanking Children while she was upset. Mother claims she was aggressive because she was "in severe 'fight or flight mode'" from posttraumatic stress disorder (PTSD). She "was seeing things the kids did as an attack. If they were misbehaving, it was like they [we]re attacking" her. She also blamed her PTSD for calling Children derogatory names, including "bitch," and telling Older Daughter she was a "'c-nt' on multiple occasions." Mother also admitted to striking Older Daughter with an object and sticking a Post-it in Younger Daughter's mouth while she was "yelling and storming mad" because she "'was having a hard time with the PTSD.'" She acknowledged that after this incident, both daughters were "'upset'" and "'cried.'" Father likewise reported after this incident that Mother was "'super enraged,'" and he was forced to calm her and "coral [*sic*] [C]hildren away from

3

her."  All three Children independently admitted they did not feel entirely safe around Mother.

In addition to Mother's direct abuse, DCFS also discovered evidence Mother's projected fears were causing Older Daughter to be subjected to unnecessary medical testing and treatments.  For example, Children's doctor (Doctor) relayed Mother has "reported that [Older Daughter] is experiencing panic attacks and symptoms of anxiety." Doctor ran "extensive tests on [Older Daughter] and completed physical exams and . . . all exams and tests reveal normal results."  Doctor could "find absolutely no medical or biological reason for the symptoms that [M]other is reporting [Older Daughter] is experiencing."  Doctor "stated that she feels [M]other may be transferring her own mental health challenges onto" Older Daughter.  Based on her interactions with Older Daughter, it was Doctor's opinion Older Daughter did not "need[] psychotropic medications or to see two therapists." In total, Mother took Older Daughter out of school for nonmedical doctor appointments approximately nine times in less than six months, even after Social Worker advised against it, with Mother reporting Older Daughter was suffering from depression, panic attacks, and anxiety; Father suspected Older Daughter told Mother she was experiencing the symptoms to skip school.

Children's primary therapist (Therapist) said she has "no concerns" about Father's parenting but "stated that she [wa]s concerned that [M]other might be fabricating [Older Daughter's] reported mental health symptoms."  Therapist reported she has never observed Older Daughter exhibiting these symptoms and believes Older Daughter is not "actually suffering from these symptoms, but that instead [M]other may be exaggerating normal behavior and projecting these symptoms onto" Older Daughter.  For example, Older Daughter reported that when she told Mother her head itched, Mother told her the itching "indicates headaches, which indicates panic attacks," and when she told Mother she was too hot to sleep, Mother told her she was "experiencing insomnia due to anxiety."  According to Therapist, Mother has rushed Older Daughter to urgent care following such seemingly innocuous complaints.  DCFS similarly reported Mother "has been overly focused on finding medical problems during initial visits (e.g., pointing out

4

normal issues such as temporary hunger or fatigue, scraped arm, etc.) until this was stopped by DCFS staff." Therapist's overall assessment of Older Daughter was that she is "a normal, healthy child" who does not need "a psychiatric assessment or psychotropic medications at this time."

Therapist also "expressed that she doesn't believe [M]other has much insight into her own mental health challenges." Although she has not treated Mother, Therapist's assessment of Mother from interacting with her was that "[M]other has unresolved anger issue[s] and poor impulse control which contributes to her emotional abuse of [C]hildren." Therapist was also concerned for Children's physical safety as Younger Daughter had disclosed Mother calling Older Daughter "derogatory names" in the past and was "aware that [M]other had been physically abusive."

On December 8, 2014, Mother took Older Daughter to the hospital because Older Daughter was allegedly "having thoughts of hurting herself." Mother had her involuntarily hospitalized for three days in a psychiatric ward, apparently without the input of Father or Older Daughter's therapist, both of whom deny Older Daughter was suicidal or needed psychiatric care. Older Daughter's attending psychiatrist diagnosed her with "unspecified depressive disorder" and released her, recommending "weekly therapy." Older Daughter later said she "d[id]n't know why" she had been hospitalized and she did not want to return after the "scary" experience. She also revealed she had "never tried to kill herself or hurt herself," and Father says when he asked Older Daughter about her alleged suicidal thoughts, "she didn't even know what death was." When Social Worker later questioned Mother as to why Older Daughter was currently exhibiting none of the symptoms she was hospitalized for, Mother nonsensically said, "'I've been helping her, I've been working on myself and she sees that . . . it's helping her.'"

DCFS filed a dependency petition on behalf of Children on December 16, 2014, under section 300, subdivisions (a), serious physical harm, (b), failure to protect, and (c), serious emotional damage. More specifically, under subdivision (a), DCFS alleged Mother had physically abused Children and put them at risk by (1) hitting them with a

book, (2) shoving Post-it notes[2] in their mouths, (3) striking them, (4) kicking them, and (5) pushing them; it also alleged Mother threw objects at Older Daughter.[3]  Under subdivision (b), DCFS alleged Mother had "mental and emotional problems, including a diagnosis of Post Traumatic Stress Disorder and anxiety, which renders the mother incapable of providing regular care for the children" and had failed to take her psychotropic drugs as prescribed.  DCFS claimed these problems jeopardized Children's "physical health and safety" and placed them at risk of future harm.[4]  Under subdivision (c), DCFS also alleged Mother had (1) inappropriately enmeshed Children in her "martial conflicts" with Father, (2) "repeatedly attempted to cause" Children "to falsely accuse" Father of abuse, (3) made disparaging remarks about Father to Children, (4) called Children derogatory or demeaning names, and (5) yelled at Children, resulting in "emotional distress requiring psychological services," which placed Children at future risk of emotional damage.  As to daughters, DCFS further alleged Mother had "repeatedly attempted to cause" them "to lie and exhibit psychological symptoms to their therapist."  DCFS finally alleged it was because of Mother's abuse that Older Daughter was psychiatrically hospitalized.

At the detention hearing, the court released Children to Father and granted Mother DCFS- or therapist-monitored visitation.  At the jurisdiction and disposition hearing, the court sustained jurisdiction on the grounds that Mother hit Older Daughter on the head with an object and Mother's not fully treated PTSD placed Children at risk of future harm because she could not properly care for them.  At the request of Father and Children, the court granted Father full legal custody.  DCFS and Mother appealed.

---

[2] The word "pole" originally appeared, but was later corrected to "Post-it."

[3] Also under subdivisions (a) and (b), DCFS alleged domestic violence between the parents had placed Children at risk of physical harm; these allegations were later stricken and are not at issue here.

[4] Also under subdivision (b), DCFS alleged Mother had a "history of illicit drug use and is a current user of marijuana" and had cared for Children while high, which endangered their physical safety and placed them at risk of future harm; this allegation was later stricken and is not at issue here.

## DISCUSSION

On appeal, DCFS, joined by Father, argues that substantial evidence does not support the dismissal of the emotional abuse allegation under subdivision (c) as to Older Daughter. In other words, DCFS and Father argue there was *nothing* in the record which supported dismissing the emotional abuse allegations and the evidence could have only led to one possible outcome, which was to sustain the emotional abuse allegation. DCFS and Father additionally contend that substantial evidence does support the court's finding under subdivisions (a) and (b). Mother, on the other hand, argues there was insufficient evidence to sustain any of the jurisdictional findings. We affirm based on the court's jurisdictional findings under subdivision (b). Mother argues even if we uphold jurisdiction, we should reverse the court's order removing custody of Children from her because removal is not supported by substantial evidence. We disagree and affirm.

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re D.P.* (2015) 237 Cal.App.4th 911, 916.) On appeal, we review jurisdictional grounds for substantial evidence, which evidence is "reasonable in nature, credible, and of solid value"; we will uphold an order supported by substantial evidence "even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) We disregard evidence conflicting with the order. (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) Under subdivision (b)(1), the court has jurisdiction over a child if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness." (§ 300, subd. (b)(1).)

7

**A.  The record contains substantial evidence that section 300, subdivision (b) jurisdictional grounds exist due to Mother's instability and abuse**

The record contains substantial evidence Mother abused and placed Children at risk of harm under section 300, subdivision (b).  As described above, Mother, admittedly, spanked Children while upset; slapped Older Daughter even though she knew "it was wrong"; and struck Older Daughter with an object and put a Post-it note in Younger Daughter's mouth while she was "yelling and storming mad" because she "'was having a hard time with the PTSD.'"  Mother admits her aggression stemmed from PTSD, which caused her to misinterpret Children's misbehaving as an attack on her.  Father has characterized Mother as "'super enraged'" during one of these episodes and had to "coral [*sic*] [C]hildren away from" Mother for their safety.  In their own words, Children do not feel entirely safe around Mother.

In addition to Mother's direct physical abuse, the record contains evidence Mother's projection of her own unresolved mental health issues onto Older Daughter has caused Older Daughter to be subjected unnecessary medical testing and treatment.  At Mother's lone insistence, Older Daughter underwent  "extensive tests . . . and . . . physical exams" for alleged mental health symptoms, all of which revealed normal results.  Mother also had Older Daughter involuntarily committed to a psychiatric ward for three days when she was just eight years old, apparently without the input of Father.

Although Mother admittedly still suffers from mental health issues, she points out that she started therapy after she struck Older Daughter with an object, and when the dependency petition was filed she had been in treatment for a year without any further reports of her directly physically abusing Children.  She claims DCFS presented no evidence Children were still at risk of harm when it filed the dependency petition and her past abuse was insufficient to sustain jurisdiction under subdivision (b).  Mother also says her treating psychologist and psychiatrist believe she is fit to parent.  What Mother fails to acknowledge, however, is that even after beginning therapy she was still projecting her own unresolved mental health issues onto Older Daughter to the point that Mother involuntarily committed Older Daughter to a psychiatric ward despite no other adults in

8

Older Daughter's life believing it was even slightly warranted. Even if Older Daughter's hospitalization does not constitute physical abuse, it speaks to Mother's continuing unstable mental state, despite therapy. The court acknowledged Mother's unresolved mental health issues, saying, "I'm hopeful that the mother gets good psychological advice with regard to [PTSD] in the future, but that's not the situation we have here today." Mother's continuing unstable mental state, which has harmed at least Older Daughter, combined with her past physical abuse of Children due to her mental illness, are sufficient grounds to sustain subdivision (b) jurisdiction because there is an ongoing substantial risk Mother may physically harm Children again.

We need not address whether the court properly sustained jurisdiction on the subdivision (a) and (c) grounds because we find subdivision (b) was an adequate jurisdictional ground. (*In re D.P.*, *supra*, 237 Cal.App.4th at p. 916.)

**B.     The record contains substantial evidence that removing custody from Mother was proper**

Mother argues that even if we sustain the jurisdictional grounds, we should find the court erred in removing Children from her. She contends DCFS presented no evidence she is an actual threat to Children and the court did not consider reasonable alternatives to removal. Mother suggests, for example, the court could condition her retention of custody on her continuing to receive mental health care. Mother argues she would do so and that her therapist has stated Mother has been attending therapy to improve her and Children's well-being. Again, however, Mother's mental health, by many accounts, has been deteriorating even with therapy, and it is precisely this deterioration that has made her a threat to Children: She has, by her own admission, yelled at and struck Children due to her unstable mental health and subjected Older Daughter to unnecessary medical testing and treatments due to her own issues, even while receiving therapy. There is no evidence these harmful behaviors will abate or cease such that Children will no longer be at risk of harm due to Mother's mental illness, even if Mother continued her therapy. Substantial evidence supports the court's removal of Children from Mother. Because the court properly sustained jurisdiction, removed

9

custody from Mother, and had no further issues to address, it properly terminated its jurisdiction.  (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 288–289 [termination of dependency jurisdiction is reviewed for abuse of discretion].)

## DISPOSITION

The juvenile court's February 5, 2015 jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.