Filed 9/8/16  In re D.T. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.T., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>A.P.,<br><br>    Defendant and Appellant. | G053207<br><br>(Super. Ct. No. 15DP0063)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gassia Apkarian, Judge.  Affirmed as modified with directions.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Petitioner and Respondent.

\*          \*          \*

A.P. (mother) appeals from the juvenile court's jurisdictional findings and dispositional orders in a Welfare and Institutions Code section 300 proceeding. Mother concedes her 14-year-old special needs daughter, D.T., comes within the jurisdiction of the juvenile court, but she contends the evidence is insufficient to support the juvenile court's findings she willfully or negligently failed to protect D.T., or that she had an unresolved substance abuse problem. She also contends the court abused its discretion by ordering her to complete a substance abuse treatment program. We agree with mother the record does not contain sufficient evidence she had a substance abuse problem, and the court erred in ordering her to complete a substance abuse treatment program. The judgment is affirmed in all other respects.

I

FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, the Orange County Social Services Agency (SSA) filed a juvenile dependency petition (Welf. & Inst. Code, § 300, subds. (b), (g); all statutory citations are to this code unless otherwise designated) alleging D.T. (born March 2001) came within the jurisdiction of the juvenile court because she had suffered, or was at substantial risk of suffering, serious harm as a result of her parents' failure or inability to supervise or protect her adequately, the failure or inability to supervise or protect her adequately from the conduct of a custodian with whom she had been left, and the willful or negligent failure to provide her with adequate food, clothing, shelter, or medical treatment. Specifically, the petition alleged mother was currently incarcerated in the State of Georgia for trafficking methamphetamine. Mother placed D.T. with a maternal aunt,[1] who subsequently left the child with the maternal grandmother. D.T. has a

_____

[1] The petition incorrectly identifies the name of the aunt. This does not affect the issues on appeal. The juvenile court should correct its records to conform to proof.

2

congenital brain disorder and suffers from severe physical impairments and developmental delays. She is nonverbal and nonambulatory. Medical personnel opined D.T.'s severe disability requires constant supervision, the maternal grandmother was not meeting the child's medical and educational needs, and she had left her unattended on several occasions. The grandmother reported being overwhelmed by the effort required to meet the child's special needs. The petition also alleged mother had an unresolved substance abuse problem. The whereabouts of the alleged father were unknown.

At the jurisdiction hearing in February 2016, mother submitted on SSA's reports. She agreed a jurisdictional finding under section 300, subdivision (g), was appropriate, but she argued the reports contained insufficient evidence she had a substance abuse problem. She also argued she did not fail to protect D.T. because she arranged for a temporary legal guardianship when she was incarcerated and she believed the maternal grandmother would meet the child's medical and educational needs.

The court sustained the allegations. In rejecting mother's argument she adequately protected D.T., the court explained "[i]t is not clear at all to this court that the mother has taken any steps in order to provide for this child's care. In fact, it is the court's understanding that the grandmother . . . put money together in order to get this child to be transported here from Georgia" after mother was arrested. The court stated mother was arrested, and family members "scooped up the kids and did the best they could." Mother apparently "notarized a letter for the maternal aunt to be able to enroll [D.T.] in school and for medical needs." Concerning the substance abuse allegations, the court apparently agreed there was no evidence mother personally used drugs, but "the word 'abuse' is a much bigger terminology. When you're trafficking narcotics, that's abuse of narcotics as well." The court noted mother needed "education in: Don't be around drugs and kids at the same time. So the word 'abuse' does not mean personally inhaling."

3

At the disposition hearing, the juvenile court took judicial notice (Evid. Code, §§ 452, 453) of records from the Georgia Department of Corrections reflecting mother received a 30-year sentence for trafficking 400 grams of methamphetamine, and she had a release date in 2026, although mother believed she would receive parole in March 2016. Mother objected to a substance abuse program as part of the case plan because there was no evidence she used drugs or suffered from a current substance abuse problem, or that substance abuse had affected her parenting. The court found a "direct nexus between risk to child and mother's involvement with methamphetamine" and stated "the drug component of services will remain." The court declared D.T. a dependent child (§ 360, subd. (d)) and found her welfare required custody be taken from her parents (§ 361, subd. (c)(1)). The court ordered reunification services, adopted SSA's case and visitation plans, and set a review hearing for July 2016.

II

DISCUSSION

A.   *Substantial Evidence Supports Jurisdiction*

Mother contends there is insufficient evidence to affirm the juvenile court's jurisdictional findings under section 300, subdivision (b), that she willfully or negligently failed to protect D.T., and that she had an unresolved substance abuse problem. She states she "made arrangements for" D.T. "to be well cared-for when she became incarcerated." Mother states she "did not neglect her children but instead had a plan, and took active measures, to ensure all of her children, including [D.T.] were cared for." She also states there was no evidence she had a substance abuse problem (allegation b-6). She cites her statements in SSA's reports admitting she had trafficked in drugs, but had never used them, and the absence of other evidence she used drugs.

Section 300 provides in relevant part, "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may

4

adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." We review the evidence to determine whether substantial evidence supports the trial court's jurisdictional findings. (*In re David M.* (2005) 134 Cal.App.4th 822, 828; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Substantial evidence means evidence that is reasonable, credible and of solid value. (*In re N. S.* (2002) 97 Cal.App.4th 167, 172; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.)

SSA responds we should refrain from addressing mother's jurisdictional claims because mother concedes a statutory basis for jurisdiction exists, and there is no evidence the challenged jurisdictional findings, apart from the substance abuse finding, have consequences for mother beyond jurisdiction. SSA notes mother has not challenged two sustained factual allegations under section 300, subdivision (b), nor does she challenge the court's jurisdictional findings under section 300, subdivision (g).[2]

---

[2] The unchallenged section 300, subdivision (b), sustained factual allegations (b-1 and b-2) include mother's current incarceration and therefore her inability to care for and support her daughter, she left the child in the care of the maternal aunt who then placed the child with the grandmother, and the whereabouts of father are unknown. Mother also does not challenge the sustained allegations under section 300, subdivision (g), that allege in substance mother has been incarcerated and cannot arrange for D.T.'s care, or the person with whom D.T. resides is unwilling or unable to provide care or support for the child.

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.] 'As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate.' [Citation.]" (*In re D.P.* (2015) 237 Cal.App.4th 911, 916 (*D.P.*); *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)  A court may exercise "'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].' [Citation.]" (*D.P.*, *supra*, at p. 917.)

Mother asserts affirming findings she negligently failed to protect D.T. will have "the unintended consequence of holding incarcerated parents to impossible standards of care and reverse the Legislative intent of ensuring simply because a parent is incarcerated they should not lose their child" and "will have the unintended consequence of condoning juvenile courts in rendering orders not in line with statutory or case law nor Legislative intent.  It allows courts to make up their own definitions and ideas about what it means to bring a child within its jurisdiction" and "also harms Mother in this case now, and in the future."

We disagree.  Mother has not demonstrated the section 300, subdivision (b), findings concerning her willful or negligent failure to protect D.T. served as the basis

6

for the dispositional orders, or will affect dependency proceedings beyond jurisdiction. Accordingly, we decline to reach these issues.[3]

The juvenile court also found (allegation b-6) "mother . . . has an unresolved problem with substance abuse which includes, but may not be limited to, methamphetamines." As part of the reunification case plan, the court ordered mother after release from custody to successfully complete an SSA approved drug treatment program.

Mother contends there is no evidence she has a substance abuse problem, meaning that she personally abused methamphetamine or other illegal drugs. SSA asserts we need not determine whether "unresolved problem with substance abuse," as used in the petition and found by the court to be true, connotes personal abuse of substances. SSA asserts this finding did not "necessarily . . . trigger" the drug treatment case plan component. SSA also asserts trafficking a dangerous drug with children in her custody justified a case plan requirement for drug treatment "weighted towards addressing the dangers such drugs can pose to children and others near and around the selling and trafficking process."

We address this issue because the substance abuse finding likely contributed to the juvenile court's imposition of a drug treatment program. (*D.P.*, *supra*, 237 Cal.App.4th at p. 917.) As noted *In re Drake M.* (2012) 211 Cal.App.4th 754, 764-769 (*Drake M.*), jurisdiction exists where the parent is unable to provide regular care for the child due to substance abuse. (See § 300, subd. (b)(1) ["A child who comes within

---

[3] Although we do not reach these issues, mother's intentional conduct in trafficking methamphetamine with children in the home caused her to become incarcerated and rendered her unable to care for her children, arguably created a substantial risk D.T. would suffer serious physical harm or illness. Likewise, mother's selection of the grandmother to care for D.T. also arguably created a substantial risk D.T. would suffer serious physical harm or illness. Mother did not supply the grandmother with the legal and financial means to care for D.T., and the grandmother lacked the ability to care for such a severely disabled child.

any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:  [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse"].)[4]  Substance abuse is understood as a """"maladaptive pattern of substance use leading to clinically significant impairment or distress"""" within a given time period.  (*Drake M.*, *supra*, at p. 766 [substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to show the parent had been diagnosed as having a current substance abuse problem by a medical professional or establish the parent has a current substance abuse problem as defined in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM)]; *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1346 [relief granted to parent where there was no clinical evaluation or testing reflecting substance abuse].)

Here, the petition's use of the phrase "unresolved problem with substance abuse," and the court's associated finding, are not supported by evidence of a pattern of substance *use* causing significant impairment or distress.  We will direct the court to modify the petition and finding b-6 to reflect, "The mother, [A.P.], is currently incarcerated in Georgia for trafficking 400 grams of methamphetamine."

B.    *Outpatient Drug Treatment Is Unwarranted*

Mother also argues the court abused its discretion by ordering her to complete a substance abuse treatment program as part of her case plan where there was no evidence she was a substance abuser.  She asserts this component of the case is not tailored to the facts of the case, and constitutes a waste of government resources.

When "a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable

---

[4]    SSA did not allege that D.T. was at risk of harm by the inability of mother to provide regular care due to mother's substance abuse.

8

orders for the care, supervision, custody, conduct, maintenance, and support of the child. . . ." (§ 362, subd. (a).) The court may also "direct any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . . The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) "The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion." (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) But the reunification plan must be tailored to the unique facts of the case. (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.)

SSA notes drug treatment is "typically necessary for actual users of drugs," but the juvenile court's decision to require drug treatment in this case was not an abuse of discretion because mother trafficked a dangerous drug out of her apartment with children in her custody. SSA cites minor's counsel's statements below suggesting a drug treatment program would include information about the risks posed by dealing with methamphetamine in the presence of children, especially a special needs child such as D.T. SSA also asserts the case plan required drug treatment only until the assigned social worker determined treatment was no longer necessary.

We have reviewed SSA's Web site providing referral links to substance abuse programs (http://ssa.ocgov.com/comres/substance). These programs appear to have no relevance to persons who are not substance abusers. Nothing reflects these programs are directed at, as SSA suggests, educating a parent on the "dangers of interacting with drugs, drug users, and her child with such dangerous drugs present." We will direct the court to delete the outpatient drug treatment program from the case plan. Presumably, many people who sell or transport illegal methamphetamine also use the drug. Accordingly, the juvenile court did not err in ordering substance abuse testing after

9

mother is released from custody. If mother tests positive, or if other evidence reveals she has a drug abuse problem, the court may impose a substance abuse treatment program. And, nothing precludes the social worker from ordering mother to obtain counseling and attend parenting education programs that would educate mother on the risks to her children from trafficking in illegal drugs and associating with drug users.

III

DISPOSITION

The juvenile court is directed to amend the petition and to modify its finding b-6 to reflect, "The mother, [A.P.], is currently incarcerated in Georgia for trafficking 400 grams of methamphetamine." The court is also directed to modify the case plan to delete the requirement that mother complete a substance abuse treatment program. In all other respects, the judgment is affirmed.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

MOORE, J.

10