Filed 11/15/22  In re Rozlyn G. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ROZLYN G., a Person Coming Under the Juvenile Court Law. | B314519 |
| | (Los Angeles County Super. Ct. No. 20CCJP02576A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DOROTHY P., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steff Padilla, Juvenile Court Referee.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Dorothy P., the mother of six-year-old Rozlyn G., appeals two of four jurisdictional findings made by the juvenile court and that portion of the disposition order requiring her to drug test, but not the finding that she and Colby G., Rozlyn's presumed father, had a history of domestic violence that endangered the child or the order declaring Rozlyn a dependent child of the court and removing Rozlyn from her parents' care and custody. Dorothy's limited challenge to the jurisdiction findings is not justiciable, and the order requiring her to drug test was well within the juvenile court's discretion even if Dorothy's frequent use of marijuana did not place Rozlyn at substantial risk of serious physical harm. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Sustained Dependency Petition and Disposition Orders*

On July 21, 2021 the juvenile court sustained in part an interlineated second amended petition pursuant to Welfare and Institutions Code section 300, subdivision (b) (failure to protect),[1] making four jurisdiction findings. First, the court found Dorothy had mental and emotional problems, including bipolar depression, that rendered her incapable of providing Rozlyn with

_____

[1] Statutory references are to this code.

2

appropriate care and supervision. As part of this finding the court sustained the allegation that Dorothy failed to regularly participate in mental health treatment or to take psychotropic medication as prescribed. Second, the court found Dorothy had a history of substance abuse and was a current abuser of marijuana, which, given the child's young age, also rendered Dorothy unable to provide Rozlyn with appropriate care. Third, the court found Colby had mental and emotional problems, including schizophrenia, that rendered him incapable of providing Rozlyn appropriate care. Finally, the court found Dorothy and Colby had a history of domestic violence, including on numerous occasions violating court-issued protection orders restraining Colby from having contact with Dorothy.

At disposition the court declared Rozlyn a dependent child of the court, removed her from the care, custody and control of her parents and ordered her suitably placed.[2] Family reunification services were ordered for Dorothy and Colby. Dorothy's case plan required her to participate in weekly random, on-demand drug testing, a support group for victims of domestic violence and continued mental health treatment with a psychiatrist and to take all prescribed psychotropic medication and abide by all outstanding court orders. She was permitted monitored visitation with Rozlyn.

---

[2] By the time of the 12-month review hearing (§ 366.21, subd. (f)) on September 13, 2022, Rozlyn had been ordered placed with her maternal grandparents in New York.

3

2.  *The Primary Evidence Supporting the Juvenile Court's Findings*

   a. *Domestic violence*

In an interview with a social worker for the Los Angeles County Department of Children and Family Services following a referral for general neglect in March 2020, Dorothy identified Colby as Rozlyn's father and said she did not have contact with him because of their history of domestic violence. In subsequent interviews with Department social workers, Dorothy confirmed this history of violence and the existence of restraining orders against Colby intended to protect her.

In early November 2020 a maternal aunt called the Department and reported Dorothy had told her several days earlier that Colby had located her, entered her apartment by breaking a window and stolen her purse. Colby was arrested shortly thereafter following a traffic stop. During the investigation police officers determined there were two outstanding Los Angeles Superior Court criminal protection orders (one with an expiration date of December 5, 2020; the second with an expiration date of May 7, 2022) that Colby had violated. The police report indicated Dorothy arrived at the scene and admitted to the officers she had agreed to meet with Colby, notwithstanding the restraining orders, because Colby had said he would give her money for Rozlyn.

Several months later, on February 24, 2021, Los Angeles police officers responded to a domestic violence incident involving Dorothy and Colby at Dorothy's residence at a Salvation Army shelter. When the officers arrived, Colby jumped out a window and fled on foot. According to Dorothy, Colby had arrived at the home the day before and held Rozlyn and her hostage,

4

threatening to kill both of them and striking Dorothy multiple times with his fists. Dorothy admitted that during the incident she had used marijuana in a bedroom while Rozlyn remained with Colby in the living room.

### b. *Dorothy's mental health issues*

In an October 22, 2020 interview with a dependency investigator and again in a February 24, 2021 interview with a social worker, Dorothy reported she had bipolar disorder and suffered from depression and was under the care of a psychiatrist. The psychiatrist confirmed the bipolar II diagnosis. As of the time the dependency proceedings began, Dorothy had declined medication to treat her conditions, but apparently by February 2021 had started to take medication to treat anxiety, but still no psychotropics for her bipolar disorder. On several occasions Dorothy explained she self-medicated with marijuana rather than use prescribed medication.

Dorothy was also receiving mental health services through a mental health clinic. The clinic's therapist, although conceding she did not have a full picture of Dorothy's situation, did not believe Dorothy's mental health interfered with her ability to provide parental care for Rozlyn.

### c. *Dorothy's marijuana use*

Dorothy repeatedly described her use of marijuana as "recreational" (although admitting she self-medicated with marijuana to treat the symptoms of her mental illness). At a jurisdiction hearing in November 2020 Dorothy testified she would smoke marijuana after taking Rozlyn to school but only at a level that would allow her to become sober in time to pick Rozlyn up when the school day was done. Asked what she would do if there was an emergency during the day and Rozlyn needed

to be picked up early, Dorothy's answer was, "I'm never high for a long time because of the amount that I smoke." During this testimony Dorothy admitted she concealed from her psychiatrist that she continued to smoke marijuana on a consistent basis. Her therapist also reported that Dorothy had not been forthcoming about her continued marijuana use.

Throughout the dependency proceedings Dorothy had multiple drug tests revealing marijuana use and many additional missed tests for which Dorothy proffered a variety of excuses but ultimately admitted, for at least some of them, she did not test because she was using marijuana. Her continued use occurred even when Rozlyn remained in her care and the juvenile court had cautioned that Rozlyn could be detained if Dorothy failed to test clean.[3] The danger to Rozlyn from Dorothy's continued marijuana use was most clearly demonstrated by Dorothy's decision to leave Rozlyn alone with Colby during the February 2021 episode of domestic violence in order to calm herself by smoking.

3. *Dorothy's Appeal*

Dorothy filed a timely notice of appeal from the court's July 21, 2021 findings and orders. In her opening brief Dorothy acknowledged she was the victim of domestic violence perpetrated by Colby and stated, "Mother does not challenge the jurisdictional findings and subsequent disposition orders

---

[3]     At the May 13, 2020 detention hearing Rozlyn was released to Dorothy with various conditions, including, "Mother shall continue to test and test cleanly." The court stated it shared the Department's concern about Dorothy's continued marijuana use and agreed Rozlyn could be detained if Dorothy failed to abide by the conditions imposed.

pertaining [to] the domestic violence." Rather, she explained, her appeal was limited to the jurisdiction findings regarding what she described as her "occasional use of marijuana" and her "diagnosis of Bipolar II, and situational depression and anxiety." In her brief she also challenged the juvenile court's disposition order requiring her to drug test, asserting "there was no causal link between Mother's use of marijuana and her ability to care for or supervise Rozlyn."

Colby has not appealed the jurisdiction findings or orders.

## DISCUSSION

1. *Dorothy's Challenge to Two of Four Jurisdiction Findings Is Not Justiciable*

Dorothy does not challenge the juvenile court's exercise of jurisdiction over Rozlyn based on the sustained allegation that she and Colby had a history of domestic violence, which included, on numerous occasions, violating court-issued protective orders. (There is also no challenge by either parent to the finding that Colby had mental and emotional problems, including schizophrenia, which rendered him incapable of providing appropriate care for the child.) Nor does she challenge the court's decision to order Rozlyn suitably placed. As a result, even if we were to strike the two jurisdiction findings Dorothy challenges, that decision would not affect the juvenile court's jurisdiction in this matter (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; ""the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent""]; see *In re M.W.* (2015)

7

238 Cal.App.4th 1444, 1452; *In re Briana V.* (2015) 236 Cal.App.4th 297, 309-310) or limit the court's authority to make all orders necessary to protect the child:  The juvenile court's "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with that discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings."  (*In re K.T.* (2020) 49 Cal.App.5th 20, 25; accord, *In re Briana V.*, at p. 311 ["The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition.  [Citation.]  In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"]; *In re I.A.*, at p. 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"]; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].)

As Dorothy correctly argues, in limited circumstances reviewing courts have exercised their discretion to consider an appeal challenging a jurisdiction finding despite the existence of an independent and unchallenged ground for jurisdiction when the jurisdiction findings "serve[] as the basis for dispositional orders that are also challenged on appeal."  (*In re J.C.* (2014) 233 Cal.App.4th 1, 4; see *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)  This, however, is not an appropriate case to exercise that discretion.

As explained in the following section, even if the court's finding regarding Dorothy's marijuana use would not support dependency jurisdiction, the court had ample discretion to order Dorothy to drug test—the only disposition order at issue—as a means of promoting Rozlyn's welfare.

   2. *The Court Did Not Abuse Its Discretion in Ordering Dorothy To Drug Test*

We review the juvenile court's disposition orders, including orders not directly based on a jurisdiction finding, for an abuse of discretion. (*In re K.T., supra,* 49 Cal.App.5th at p. 25; see *In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; see generally *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474 ["The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion"].)

Despite Dorothy's insistence that her use of marijuana was not a problem and her vow at the November 2020 jurisdiction hearing that she would stop using,[4] the record before the juvenile court clearly established she was unable to do so. Following that hearing she continued to have positive drug tests and to skip other court-ordered tests, apparently because she feared positive results. And, as discussed, Dorothy concealed the full extent of her marijuana use from her psychiatrist and the clinical therapist who were treating her. Most strikingly, while purportedly being held hostage and physically attacked by Colby

---

[4]   After stating unequivocally, "I don't have a problem," Dorothy testified at the November 19, 2020 hearing, "I will definitely stop, definitely for sure."

in February 2021, Dorothy left Rozlyn alone with Colby in order to smoke marijuana in a different room.

Whether or not Dorothy's ongoing, and seemingly uncontrollable, behavior qualified as a substance use disorder within the meaning of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) or was sufficient without the finding of domestic violence to support the order sustaining the section 300 petition to protect Rozlyn, a child of tender years (cf. *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218-1219), her ongoing marijuana use was sufficiently troubling to justify the juvenile court's requirement that her use be monitored during the period of reunification services to assess whether the situation was improving, remaining constant or deteriorating and when, if ever, it would be safe to return Rozlyn to Dorothy's custody. There was no abuse of discretion.

## DISPOSITION

The jurisdiction findings and disposition orders are affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.