Filed 5/23/23  In re John M. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JOHN M. et al., Persons Coming Under the Juvenile Court Law. | B319111 |
| | (Los Angeles County Super. Ct. No. 20CCJP00499) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR M.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda L. Sun, Judge. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

——————————————

Oscar M. (Father) appeals from the jurisdiction findings and disposition orders declaring 15-year-old John M. and nine-year-old Emerald M. dependents of the juvenile court after the court sustained allegations under Welfare and Institutions Code[1] section 300, subdivision (b)(1), that Father had mental and emotional problems, including visual and auditory hallucinations, and Father and Maria R. (Mother) had a history of substance abuse, including methamphetamine use, which placed the children at risk of serious physical harm. Father contends there is not substantial evidence to support the court's jurisdiction finding he abused drugs, and therefore, the disposition orders requiring him to participate in a full drug program with aftercare and random drug testing should be reversed.

Because Father does not appeal from the jurisdiction findings based on his mental and emotional problems or Mother's substance abuse, his challenge to the jurisdiction finding based on his substance abuse is not justiciable. Moreover, the juvenile court did not abuse its discretion in ordering Father to participate in a drug program and random drug testing. We affirm.

---

[1] Further statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Referrals, Investigation, and Petition*

On December 3, 2021 the Los Angeles County Department of Children and Family Services (Department) received a referral alleging Father took Emerald to the hospital because he believed she had been sexually assaulted by an unknown perpetrator who had been coming into the home. The reporting party stated Father was hallucinating and delusional. Paternal grandmother, Gudelia H., denied anyone came into the home she shared with Father, and Emerald denied anyone touched or abused her. The referral also alleged Father had been placed on a "5150 hold" months earlier after pointing a gun at his nephew.[2]

A social worker interviewed Father in the family home on December 3. Father was calm and answered questions coherently. He did not appear to be under the influence of drugs or alcohol; however, he reported hearing five or six voices speaking to him during the interview. Father stated that around the time the COVID-19 pandemic began (in early 2020), he and

_____

[2]   Section 5150 authorizes peace officers and certain mental health professionals to hospitalize individuals perceived to be a danger to themselves or others for a 72-hour period to conduct a mental health evaluation. On June 28, 2021 the Department received a referral alleging Father was placed on a 5150 hold after he pulled out a gun for protection and accused Gudelia and the paternal aunt of bringing "'enemies'" into the home and installing surveillance devices. The referral was deemed inconclusive. On November 27, 2021 Father reported he had video footage of unknown people coming into his home while he and the children were sleeping. The Department did not find sufficient evidence to assign the referral for an investigation.

Mother, who were then married and living together, started having problems.[3]  Father began to hear "weird noises around the home," but Mother told him he was "crazy," and she moved out, leaving the children with him.  Father started hearing more noises, and he became convinced something bad was happening to the children.  He installed video cameras throughout the home, and he claimed he could see the shadows of people moving around in the recordings.  According to Father, people would come through the front door or crawl through the ceiling, and it appeared the people were sexually molesting the children.

Father admitted he smoked marijuana in the past, but in the summer of 2020 he stopped because he was working as a bus driver for the Los Angeles Unified School District (LAUSD) and was subject to random drug testing.  The last time he smoked marijuana was in early 2020.  Father denied using illicit drugs or keeping drug paraphernalia in the home.  The social worker told Father hallucinations can result from drug use and asked Father if he would take a drug test the following day.  Father declined to do so.  The social worker conducted a walk-through of the home, but it was dark in Father's room, so she could not see if there were drugs or drug paraphernalia in the home.  On December 8, 2021 Father again declined to take a drug test, and after agreeing on January 7, 2022 to take a drug test, he failed to show for a test scheduled for the next day.  On January 10 Father again agreed to drug test, and the next day he tested negative.

---

[3]     Father and Mother were married in 2012 or 2013, and on October 28, 2021 the family court entered a judgment of dissolution awarding them joint legal custody of the children, with Father having sole physical custody and Mother having unmonitored visitation.

On December 3, 2021 the social worker interviewed John, Emerald, and Gudelia individually. John reported that around the beginning of the year, Father would say people were coming into the home to hit John and Emerald and to touch Emerald inappropriately. John told Father no one had come into the home or had done anything improper, but Father was insistent. John stated in December and in subsequent interviews in early 2022 that he had never seen Father drink alcohol, use drugs, or be under the influence of drugs.

Emerald told the social worker that in 2020 Father began to talk about people being in the home. He had stopped for some period, but recently started seeing people again. She had never witnessed Father being under the influence of drugs or alcohol; he was not violent; and she felt safe in the home. Emerald denied she had been sexually abused. However, on at least one occasion Father wrapped her tightly in a blanket because he feared a stranger would touch her sexually. She later reported she was afraid of Father's behavior and preferred to stay with Mother.

Gudelia stated she wanted Father to receive counseling because he was hearing voices. Father had shown Gudelia the video recordings he believed depicted people entering the home and abusing the children, but she did not see anything abnormal on the recordings. Gudelia did not know what was causing Father's hallucinations, but she wondered whether he might be using drugs. However, although she had seen Father use marijuana in the past, she had never seen him use or be under the influence of illicit drugs. Father did not smoke around her or the children, and she never saw drugs or paraphernalia in the home.

Mother told the dependency investigator she received a text message on December 25, 2021 from a person she did not know (although she suspected the message came from Father's girlfriend) stating, "Save the children. He has been on meth for a month. They are not safe."

Father's girlfriend, Van T., denied Father used drugs. She said Father was a very loving and attentive father, and Father's belief that people were trespassing in his home was grounded in reality because Mother had shown up in his backyard before, and they could hear noises because the walls of the house were thin.

Paternal aunt Denise M. reported that Father's behavior had changed substantially in the prior two years, and he had become paranoid, aggressive, and "'schizophrenic.'" Denise found a brown bag containing a pipe in Father's sock. It was "'not a regular looking pipe for weed.'" Rather, it looked "'like a straw and from the end, a ball all clear.'" Denise believed Father was using drugs on and off, and he needed help but was too proud to ask. She believed Van was the reason Father was using drugs in light of a comment by Father that Van had "connections."

On January 27, 2022 the Department received a second referral alleging Father called the police because he believed friends of John had entered the home and punched John in his back. When a mandated reporter arrived at the home, Father showed video recordings he insisted showed multiple people in the home, but the reporter saw only furniture. According to the police report, John told the responding police officers that no one had hit him. Further, John said Father was a drug user and was using methamphetamine. Mother arrived at the scene and likewise told the officers she believed Father was using methamphetamine.

The next day the social worker interviewed Mother, who was living at the home of maternal grandmother. Shortly after marrying Father in 2012 or 2013, they began using methamphetamine and smoking marijuana together, a few times per year at first, then on long weekends. In 2015 Mother stopped using drugs and asked Father to do the same. Father agreed, and Mother believed Father was drug-free from 2015 until early 2020. However, a few days before Mother moved out in 2020, she saw that Father had a "meth rock" in one of his socks. At that time Father would occasionally tell her that people were trying to break into the home. In 2021 Father started sending her videos purporting to show intruders (who were not there). Mother became concerned that Father's delusions might be due to his using methamphetamine. Mother admitted she had last used methamphetamine three months earlier. She used marijuana on a daily basis to manage her stress, and she tested positive for marijuana but negative for all other substances on January 31, 2022.

On January 28 the social worker visited Father at his home. Father appeared tired and was experiencing delusions during the visit, but there was no indication he was under the influence of any substance. Father reiterated he did not use drugs and told the social worker that Mother was conspiring against him with the people whose voices he heard. Asked if he had ever used methamphetamine or a drug other than marijuana, he responded, "'Maybe cocaine,'" but it was a "'long time'" ago and he had not used it recently. The social worker asked Father to take a drug test the following day, but Father declined, noting he had already tested (presumably referring to the January 11 negative test). On January 31 the social worker

7

again asked Father to take a drug test, and he declined. Father agreed to drug test on February 2, and he tested negative for drugs.

On February 4, 2022 the children were detained from Father and released to Mother. On February 8 the Department filed a petition on behalf of John and Emerald under section 300, subdivision (b)(1), alleging Father had mental and emotional problems, including auditory and visual hallucinations, which placed the children at risk of serious physical harm, and Mother failed to protect the children from Father's mental and emotional problems (count b-1). The petition further alleged Mother was a current abuser of methamphetamine and marijuana, and Father failed to protect the children from Mother's drug use (count b-2); and Father had a history of substance abuse, including cocaine, methamphetamine, and marijuana, and Mother failed to protect the children from Father's substance abuse (count b-3).

At the February 10, 2022 detention hearing, the juvenile court detained the children and released them to Mother. The court ordered Mother and Father to have weekly random and on-demand drug testing and referred Father for psychiatric or psychological counseling and follow-up treatment.

B. *The Jurisdiction and Disposition Report and Hearing*

The jurisdiction and disposition report attached the police call logs for multiple 2021 incidents. The log for the June 28, 2021 incident (in which Father brandished a gun) indicated Father was possibly under the influence of alcohol or marijuana. The log for an incident on September 8, 2021 (in which Father reported three people were sexually assaulting the children) included a notation that Father was "possibly 5150/under the

influence of narcotics." The log for a November 25, 2021 incident (in which Father rambled about people touching the children) included a notation that Father was "possibly under [the] influence."

The March 9, 2022 last minute information for the court stated Father had been referred for weekly testing and tested negative for drugs on February 24, 2022; he was turned away on March 3 for inadequate identification. A social worker stated Father's negative tests were "'not on-demand'" because "'he would call and agree to test days later.'" Father had enrolled in a parenting class and attended a therapy session, but he declined to undergo a psychiatric evaluation.

At the March 10, 2022 jurisdiction and disposition hearing, the juvenile court sustained all three counts concerning Father's mental health and Mother's and Father's drug abuse, but the court struck the allegations that each parent failed to protect the children from the other parent. As to count b-3 alleging Father had a history of substance abuse, the court found, "Father himself admitted that he may have used cocaine. He was not forthcoming at all regarding his own substance abuse or substance use. He was observed by his own relative [Denise] . . . that there is a significant change of behavior especially with regard to his aggression and paranoia in the last two years in which the aunt also found a pipe which is . . . not one used for marijuana." The court found this was circumstantial evidence of Father's continued use of drugs, placing the children at risk of harm "because his drug use may be a contributing factor to his erratic behavior and his paranoia." Further, "with regard to the father's negative [drug] tests, those are not random tests. Those are scheduled tests. So we do not have any information whether

the father is indeed sober as of this point in time. And by his own statement to his sister, the paternal aunt, he told his sister that his girlfriend has past drug connections."

The juvenile court declared the children dependents of the court and ordered them removed from Father's custody and released to Mother. The court ordered Father to participate in a full drug program with aftercare, weekly random and on-demand drug testing, mental health counseling including a psychological assessment, parenting classes, and individual counseling to address case issues. The court also ordered Father to take all prescribed medication, and it ordered monitored visitation for two hours twice weekly.

Father timely appealed. Mother did not appeal.

## DISCUSSION

A. *Father's Challenge to One of Three Jurisdiction Findings Is Not Justiciable*

Father contends there is not substantial evidence to support the juvenile court's finding on count b-3 of the petition that Father had a history of substance abuse, placing the children at risk of serious physical harm. Father does not, however, challenge the juvenile court's exercise of jurisdiction over John and Emerald based on the sustained allegations Father had mental and emotional problems and Mother was a current substance abuser. Nor does he challenge the children's placement with Mother. Because the juvenile court has jurisdiction over the children regardless of whether the court properly sustained the substance-abuse allegation as to Father,

10

and he has not identified any adverse consequences of that finding, Father's challenge is not justiciable.

An appeal from a jurisdiction finding under section 300 is not justiciable where "no effective relief could be granted . . . , as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such [challenged] jurisdictional grounds." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 329 (*Madison S.*); accord, *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].) "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979; see *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 ["'[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent.'"]; *Briana*, at p. 309 ["[W]e need not address jurisdictional findings involving one parent where there are unchallenged findings involving the other parent."].)

Nevertheless, appellate courts "may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re D.P.* (2015) 237 Cal.App.4th 911, 917,

11

quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; accord, *Madison S., supra*, 15 Cal.App.5th at p. 329.)

Father acknowledges the juvenile court has jurisdiction over John and Emerald regardless of the resolution of this appeal, but he urges us to exercise our discretion to consider his challenge because a sustained substance-abuse finding could potentially impact future dependency proceedings, and it is the basis for the disposition orders. (See *In re D.M.* (2015) 242 Cal.App.4th 634, 638-639 [appellate court exercised discretion to consider mother's challenge to jurisdiction finding she intentionally inflicted serious physical harm upon the child despite unchallenged findings based on father's physical and sexual abuse of mother where the finding as to mother had the potential to impact future proceedings, and the court's order that she attend parenting classes and individual counseling "hinge[d] on the validity of the jurisdictional finding against her"].)

We decline to exercise our discretion. Father has failed to identify any consequences in a potential future dependency proceeding that will result from the juvenile court's substance-abuse finding. The Department's evidence that Father used methamphetamine, cocaine, and marijuana in the past and had resumed using methamphetamine (including possession of the drug and paraphernalia), as well as Father's paranoid and delusional behaviors endangering the children, may be considered in a future dependency proceeding regardless of the jurisdiction finding in this case, and any future custody order would need to be based on conditions existing at that time. (See *Madison S., supra*, 15 Cal.App.5th at p. 330 ["[T]he substance of the spanking allegation would almost certainly be available in any future dependency or family court proceeding, regardless of

12

any determination on our part as to whether it formed an independent basis for juvenile court jurisdiction."]; *In re I.A., supra*, 201 Cal.App.4th at pp. 1494-1495 ["Father . . . fails to suggest any way in which this [jurisdiction] finding actually could affect a future dependency or family law proceeding, and we fail to find one on our own. In any future dependency proceeding, a finding of jurisdiction must be based on current conditions."].)

Moreover, although Father challenges the disposition orders requiring that he participate in a full drug program with aftercare and random drug testing, he argues only that the orders should be reversed because the jurisdiction finding should be reversed. But the juvenile court had discretion to order a disposition case plan for Father based on the sustained allegations against Father and Mother. (See *In re K.T.* (2020) 49 Cal.App.5th 20, 25 ["The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings."]; *In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 ["Irrespective of whether the court's jurisdictional findings as to [mother] were well founded, the court had jurisdiction over the child. Accordingly, it had the authority to order a nonoffending parent to participate in services."].) As we discuss below, regardless of whether Father's alleged substance abuse would support jurisdiction, the court had discretion to order Father to participate in a drug program and random drug testing to protect John and Emerald.

13

B.    *The Juvenile Court Did Not Abuse Its Discretion in Ordering Father To Participate in a Drug Program and Random Drug Testing*

We review the juvenile court's disposition orders for an abuse of discretion. (*In re F.P.* (2021) 61 Cal.App.5th 966, 975 ["'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'"]; *In re K.T., supra*, 49 Cal.App.5th at p. 25.)

There was significant evidence Father continued to use illicit drugs and his substance abuse endangered the children. As the juvenile court observed, Father admitted he used marijuana and cocaine in the past, but he was not forthcoming about using other drugs. He denied ever using methamphetamine, but Mother reported she and Father regularly used methamphetamine before 2015, and she suspected Father was again using methamphetamine because she found a meth rock in his sock in 2020 and his behavior had grown increasingly paranoid and delusional in late 2021. Denise likewise believed Father was using methamphetamine because she found a glass pipe in his sock (not of the type used to smoke marijuana) and Father exhibited dramatic behavioral changes since 2020, including aggression and paranoia. Although John told social workers he never saw Father use drugs, he reported to the police officers who responded to the January 27, 2021 incident that Father used methamphetamine. The police call logs for Father's calls on September 8 and November 25, 2021 and January 27, 2022 also stated Father may have been under the influence of drugs or alcohol at the time of the calls. Father declined the

14

Department's requests to test for drugs on December 4 and 8, 2021 and January 31, 2022, and he failed to report to an agreed-upon test on January 8, 2022. Although he tested negative for drugs on January 11 and February 2, 2022, Father took both tests a few days after he declined or missed a test. After the juvenile court at the detention hearing referred Father for weekly drug testing, Father tested negative once (on February 24, 2022) and was turned away for a lack of identification once (on March 2). As the court found, Father's negative tests were not random and did not demonstrate Father was not using drugs. Although Father argues he was required to drug test for LAUSD, there is no evidence in the record regarding Father's work-related testing.

Moreover, Father does not dispute there is extensive evidence he experienced increasing visual and auditory hallucinations, delusions, and paranoia beginning in 2020 and continuing during the jurisdiction hearing. Nor does he challenge the juvenile court's findings that these behaviors endangered the safety of John and Emerald. The court reasonably found Father's use of methamphetamine may have contributed to these behaviors. Regardless of whether Father's past and continuing substance abuse constituted substantial evidence to support the court's substance-abuse finding under section 300, subdivision (b)(1), the evidence was sufficiently concerning to support the court's disposition plan ordering Father to undergo random weekly drug testing and to participate in a drug program with aftercare.

## DISPOSITION

The jurisdiction findings and disposition orders are affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.